(905 P.2d 692)

No. 72,972

In the Matter of the Marriage of TRESIA L. RAY, *Appellant*, and ROBERT H. RAY, *Appellee*.

Opinion filed October 27, 1995.

*Henry O. Boaten*, of Topeka, and *Sulaimon Adebayo Hassan*, of Kansas City, for the appellant.

*D. Richard White*, of Lawrence, for the appellee.

Before LEWIS, P.J., PIERRON, J., and JAMES W. PADDOCK, District Judge Retired, assigned.

LEWIS, J.: Tresia and Robert Ray were married in 1977 and divorced in 1991. Tresia was held to be in indirect contempt of an order of the trial court arising out of the divorce action. She appeals from that decision.

There are two principal factors in this dispute. One is a Chapter 13 bankruptcy action filed by Tresia several months prior to the divorce action. The other is the divorce action itself.

In March 1990, Tresia filed a voluntary petition for Chapter 13 bankruptcy. Among the debts listed in the bankruptcy petition was a debt to Sears Consumer Finance Corporation (Sears). Sears filed

a claim in Tresia's bankruptcy action, but the claim was disallowed. Ultimately, Tresia completed her Chapter 13 plan and was discharged.

In September 1990, Tresia filed a petition for separate maintenance, which was later amended to a petition for divorce. Among the joint debts of Robert and Tresia was the Sears debt, which also represented a lien on the parties' home.

On January 31, 1991, Tresia and Robert executed a separation and property settlement agreement. This agreement was incorporated into the decree of divorce in February 1991. Paragraph 17 of that agreement provided, among other things:

> "The wife shall [assume] and be solely responsible for the following obligations:
>
> Sears Consumer Finance     $5,000.00 (approx)
> Lawrence Motors            $  300.00 (approx).
>
> "Each party shall be individually responsible for individual debts incurred by him or her not specifically identified above; that *each party shall indemnify and hold harmless the other party from any loss, claim, suit at law and/or judgment which the other party might suffer by reason of the responsible party failing to meet his or her obligations as stated herein.*" (Emphasis added.)

Tresia failed to pay the Sears obligation as promised in the settlement agreement and as ordered by the trial court. Sears sued Robert on that obligation, and he confessed judgment in favor of Sears in the amount of $9,850.71 plus interest and costs. As we understand it, Robert is currently making monthly payments to Sears on the judgment it holds against him.

After Sears obtained its judgment against Robert, he filed a motion in the divorce court seeking to hold Tresia in indirect contempt for her failure to pay the Sears obligation and hold him harmless under the parties' settlement agreement. The trial court agreed with Robert and held Tresia to be in indirect contempt of court. In reaching that decision, the trial court concluded that the Sears debt owed by Tresia was not discharged by her bankruptcy and that any discussion as to the reaffirmation of that debt was moot. As to the Sears debt, the court held: "Thus, the divorce court order requiring Petitioner to pay the outstanding balance on the debt

owed to Sears is now binding *because that debt was not discharged in bankruptcy.*" (Emphasis added.)

## THE SEARS DEBT

The order of the trial court holding Tresia in indirect contempt appears to be primarily based on the failure to pay the debt to Sears. The order does refer to the hold harmless provisions of the property settlement agreement. However, it appears to us that no one truly focused on the hold harmless obligation.

The key decision reached by the trial court in holding Tresia in indirect contempt was that the Sears debt was not discharged by her bankruptcy. The trial court erred in reaching this conclusion. The record indicates that after the trial court found Tresia to be in contempt, she filed a motion in the bankruptcy court, asking that court to determine whether the Sears debt was discharged by bankruptcy. In March 1995, the bankruptcy court heard that motion and held: "Pursuant to the operation of Sections 1327 and 1328, regardless of the classification given the Sears debt, the debtor's obligation to Sears was discharged in her Chapter 13 proceeding."

In the context of determining whether a certain debt has been discharged, the decision of the bankruptcy court is controlling. In general, bankruptcy courts have exclusive jurisdiction in determining the dischargeability of debt. 28 U.S.C. § 1334(a) and (c) (1988). Dischargeability of a debt is controlled by the bankruptcy code. See 11 U.S.C. §§ 524 and 1328 (1988). Accordingly, the decision of the bankruptcy court on the status of the Sears debt takes precedence over the decision of the trial court on that same issue.

We hold that the trial court erred in its conclusion that the Sears debt was not discharged in Tresia's bankruptcy. The discharge of the Sears debt means that Tresia had no liability to Sears and her obligation to Sears was, in fact, extinguished.

"A discharge in a case under [the bankruptcy code]— . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal

liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).

It is clear to us that a judgment of contempt may not be imposed for failure to pay a debt discharged in bankruptcy. Curiously enough, we have been unable to find a Kansas decision directly on point. In *Long v. Brooks*, 6 Kan. App. 2d 963, Syl. ¶ 4, 636 P.2d 242 (1981), we held: "It is not lawful to punish by contempt the failure of a spouse to pay an extinguished judgment contained in the divorce decree." This philosophy was basically adopted by the Supreme Court in *Cyr v. Cyr*, 249 Kan. 94, 99, 815 P.2d 97 (1991), although in a different context. A discharge in bankruptcy extinguishes the debt discharged. On the basis of the logic stated in *Long v. Brooks*, it is not lawful to punish by contempt the failure to pay a debt discharged in bankruptcy. Accordingly, we hold that the trial court erred in holding Tresia in indirect contempt for her failure to pay the Sears debt which had been discharged in bankruptcy.

## THE HOLD HARMLESS OBLIGATION

The matter is not, however, terminated by our conclusion that Tresia could not be held in contempt for failing to pay the Sears debt. Tresia had another obligation which did not exist when she filed her Chapter 13 bankruptcy. As a result of the property settlement agreement, she became bound to "hold harmless" Robert "from any loss, claim, suit at law and/or judgment which" Robert "might suffer by reason of" Tresia's "failing to meet her obligations" under the settlement agreement. The settlement agreement and the hold harmless obligation did not exist at the time Tresia filed for Chapter 13 bankruptcy. In our judgment, the hold harmless obligation may be the basis for holding Tresia in indirect contempt. In other words, the trial court in this case may have been right but for the wrong reason.

The Sears obligation was extinguished, as to Tresia, by her bankruptcy. The hold harmless obligation, however, is totally separate and apart from the Sears obligation and is owed not to Sears but to Robert. Tresia's obligation to Robert under the hold harmless clause of the settlement agreement is a judgment in favor of Robert

and against Tresia. It is a judgment which Robert is free to enforce if it was not discharged by bankruptcy. It is a judgment which Tresia is not free to ignore if it was not discharged by bankruptcy.

We cannot reach a decision on this appeal as to whether Robert's claim as a creditor under the hold harmless agreement was discharged by Tresia's bankruptcy. The record on appeal is insufficient in that regard. We remand this action for that determination.

Under 11 U.S.C. § 101(10) (1988), "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." See *In re Erin Food Services, Inc.*, 980 F.2d 792 (1st Cir. 1992). The matter is one of logic. If an entity does not have an enforceable claim against a debtor at the time a bankruptcy is filed, that entity is not and cannot be a creditor. Robert's claim as a creditor under the hold harmless clause of the property settlement agreement did not arise until nearly 10 months after Tresia filed for Chapter 13 bankruptcy. At the time the Chapter 13 order was entered, Robert was not a creditor of Tresia as regards any claim under the parties' settlement agreement. See *Bush v. Taylor*, 912 F.2d 989 (8th Cir. 1990).

Robert's claim under the hold harmless clause and the parties' settlement agreement is at the very best a post-petition claim and is controlled by 11 U.S.C. § 1305 (1988). If the holder of a post-petition claim does not file a formal claim in a Chapter 13 bankruptcy, there can be no discharge of the post-petition debt. See 5 Collier on Bankruptcy, § 1305.01 (15th ed. 1995); 3 Lundin, Chapter 13 Bankruptcy § 9.71, pp. 9-36 & 9-37 (2d ed. 1994). Indeed, neither the debtor nor the trustee in a Chapter 13 bankruptcy has the ability to either force a post-petition creditor to file a proof of claim or to file one on behalf of such a creditor. *In re Goodman*, 136 Bankr. 167 (Bankr. W.D. Tenn. 1992); 5 Collier on Bankruptcy, § 1305.01 (15th ed. 1995); 2 Lundin, Chapter 13 Bankruptcy § 7.38, pp. 7-104 & 7-105 (2d ed. 1994).

Robert's hold harmless claim against Tresia could only have been discharged by her bankruptcy if Robert filed a claim seeking to enforce that obligation. The record on appeal does not contain the bankruptcy file, and we cannot make a determination as to whether

Robert filed such a claim. It is for this reason that we are required to remand the matter for additional findings and conclusions.

If Robert's hold harmless claim against Tresia survived her bankruptcy, it could be the basis for a finding of indirect contempt. We remand this case for a determination of whether the hold harmless clause of the parties' settlement agreement was discharged by Tresia's bankruptcy. If the court finds that this obligation was not discharged, it may proceed at its discretion on the contempt adjudication.

We suggest that on remand the parties once again invoke the jurisdiction of the bankruptcy court to determine the status of Tresia's hold harmless obligation to Robert. A determination of the bankruptcy court on this issue would determine the future course of these contempt proceedings.

## MATERIAL BREACH OF CONTRACT

Tresia argues for the first time on appeal that her obligation under the settlement agreement was discharged by Robert's "material breach." The breach to which Tresia refers is Robert's failure to pay the first mortgage on the parties' residence. There is no question but that Robert agreed to pay this obligation under the parties' settlement agreement and failed to do so.

This issue was not raised before the trial court. "A point not presented to the trial court will not be considered for the first time on appeal." *University of Kansas v. Department of Human Resources*, 20 Kan. App. 2d 354, Syl. ¶ 1, 887 P.2d 1147 (1995).

If Robert has violated a provision of the parties' settlement agreement in favor of Tresia, we suggest that Tresia raise that issue in an appropriate motion before the trial court.

## OTHER ISSUES

Tresia argues that Robert failed to mitigate his damages by confessing judgment to the Sears debt. This argument is without merit. Robert had no defense to the Sears debt, and we will not hold that he was required to raise meaningless defenses in order to mitigate his damages.

The parties further discuss whether the Sears debt was revived by Tresia in the divorce proceedings.

The trial court determined that this issue was moot and did not decide it. In any event, we fail to see where a determination on this issue could be of benefit to Robert. The debt to Sears was an obligation owed by Tresia to Sears, not to Robert. The revival of the Sears debt might enable Sears to proceed against Tresia, but it would be of precious little benefit to Robert.

In our judgment, the Sears debt was discharged by the bankruptcy court, and we see no indication that Tresia revived the Sears obligation by entering into the property settlement agreement in the divorce action.

The order of the trial court holding Tresia in indirect contempt is reversed. The matter is remanded with instructions to determine whether Tresia's hold harmless obligation to Robert was discharged or affected by her Chapter 13 bankruptcy.

Reversed and remanded.