**Fletcher Whaley LONG**

v.

**Jessica L. McALLISTER–LONG.**

Court of Appeals of Tennessee,
at Nashville.

Feb. 24, 2006 Session.

Aug. 28, 2006.

Permission to Appeal Denied by
Supreme Court Jan. 29, 2007.

George E. Copple, Jr., Nashville, Tennessee, for the appellant, Jessica L. McAllister–Long.

John E. Herbison, Nashville, Tennessee, for the appellee, Fletcher Whaley Long.

## OPINION

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

This appeal involves a post-divorce criminal contempt petition. Approximately four years after the divorce, the former wife filed a petition in the Chancery Court for Robertson County seeking to hold the former husband in criminal contempt for willfully breaching the provisions in the parties' marital dissolution agreement requiring him to pay and to indemnify her for certain marital debts. The husband moved to dismiss the petition for failure to allege that he had violated a court order and for failure to comply with Tenn. R.Crim. P. 42(b). The trial court denied the wife's motion to amend her petition and dismissed the petition because it did

not contain an explicit allegation that he had willfully violated a court order. We have determined that the wife's petition alleges willful violations of the parties' divorce decree and that it also satisfies all the requirements of Tenn. R.Crim. P. 42(b). Therefore, we conclude that the trial court erred by dismissing the wife's contempt petition.

## I.

Fletcher Long and Jessica McAllister–Long were divorced on October 18, 2000 in the Chancery Court for Robertson County. The divorce decree approved and incorporated a marital dissolution agreement prepared and signed by the parties in August 2000.[1] Among other things, this agreement awarded Mr. Long the marital residence and directed him to hold Ms. McAllister–Long harmless for the indebtedness on the property. The agreement also awarded Ms. McAllister–Long the parties' 2000 Jaguar and Ms. McAllister–Long's nearly six-carat diamond engagement and wedding ring set as alimony in solido. Because Mr. Long had purchased the Jaguar and the diamond ring set on credit, the marital dissolution agreement required him to pay these debts and to hold Ms. McAllister–Long harmless.

According to Ms. McAllister–Long, Mr. Long repeatedly failed to make the house payments and the Jaguar payments in a timely manner. Accordingly, Mr. Long's creditors began mailing late notices to both Mr. Long and Ms. McAllister–Long. Eventually the creditors sent notices of their intent to take further action if the accounts were not brought current.

On August 6, 2004, Ms. McAllister–Long filed a petition in the Chancery Court for Robertson County seeking to hold Mr. Long in criminal contempt for failing to pay these debts and to hold her harmless as required by the October 18, 2000 divorce decree. She alleged that Mr. Long was a "successful attorney" in Davidson County, that he had the "financial ability at all times" to make these payments, and that his "failure and refusal to do so has been in willful contempt of court." She also alleged that Mr. Long's repeated failure to make timely payments "had a deleterious and harmful effect" on her credit and had damaged her credit standing. To emphasize the point, Ms. McAllister–Long attached several dunning letters to her petition.

Mr. Long responded by moving to dismiss Ms. McAllister–Long's petition. He insisted that Ms. McAllister–Long had somehow not complied with Tenn. R.Crim. P. 42(b) because the trial court had failed to review the substance of her petition and had failed to order him to show cause why he should not be held in contempt. Accordingly, he requested the trial court either to dismiss Ms. McAllister–Long's petition with prejudice or to conduct its own independent review of Ms. McAllister–Long's petition to determine (1) whether it was being pursued for improper motives, (2) whether it was being pursued without regard to the interests of justice, and (3) whether the alleged conduct constituted contempt at all. Ms. McAllister–Long responded by asserting that the requirements of Tenn. R.Crim. P. 42(b) were satisfied as long as the court reviewed the petition to determine whether it was being pursued for improper motives and then set a date for a show cause hearing.

On November 10, 2004, the trial court held a hearing on Mr. Long's motion to

---

1. The agreement recites that the parties prepared this agreement without assistance of counsel. However, it also recites that Mr. Long is a practicing attorney, and thus we presume that Mr. Long drafted the document.

dismiss. Two weeks later, on November 24, 2004, the court filed an order granting Mr. Long's motion to dismiss. The court concluded that "the allegations of the petition for contempt fail to allege that ... [Mr. Long] has violated a court order." The court reached this conclusion based on a rather cramped construction of the parties' marital dissolution agreement. It found that the marital dissolution agreement did not require Mr. Long to make any mortgage payments, let alone timely mortgage payments. Similarly, the court found that while the marital dissolution agreement required Mr. Long to make the Jaguar payments, it did not require him to make these payments in a timely manner. Accordingly, the trial court concluded that Ms. McAllister–Long's petition did "not 'state the essential facts constituting the criminal contempt charged' as Tenn. R.Crim. P. 42(b) requires."

The trial court also concluded that the petition was defective insofar as it could be construed as seeking to hold Mr. Long in criminal contempt for willfully failing to hold Ms. McAllister–Long harmless for the debts as required by the October 18, 2000 order. The court found this portion of the petition defective because "the facts set forth in the contempt petition ... allege harm in only a conclusory fashion and fail to meet the requirements of Rule 42(b)."

In a final curious turn of events, the trial court denied Ms. McAllister–Long's motion to amend her petition to cure the perceived shortcomings. However, the court explicitly stated that its order denying Ms. McAllister–Long's contempt petition was "without prejudice" and would not have a res judicata effect on any future criminal contempt petition Ms. McAllister–Long might file. Rather than filing an amended petition for contempt, Ms. McAllister–Long perfected this appeal.

## II.

### MS. MCALLISTER-LONG'S STANDING TO PROSECUTE MR. LONG FOR CRIMINAL CONTEMPT

■ As a threshold matter, Mr. Long asserts that Ms. McAllister–Long and her attorney lack standing to seek to hold him in criminal contempt for willfully violating the October 18, 2000 divorce decree. He insists that the contempt petition should have been filed either by the district attorney general or a private attorney appointed by the trial court. This argument is unpersuasive.

■ Petitions for criminal contempt must be prosecuted by the district attorney general or by a private attorney appointed by the court only when (1) the alleged contempt does not stem from an underlying court order, (2) when the district attorney general declines to pursue the matter, or (3) when no other attorney familiar with the grounds for contempt is readily available. *Wilson v. Wilson,* 984 S.W.2d 898, 903 n. 7 (Tenn.1998); *Black v. Blount,* 938 S.W.2d 394, 402–03 (Tenn. 1996). However, when the accusation of criminal contempt arises from the violation of a court order, it is quite proper that the attorney for the opposing party in the underlying litigation pursue the charge. *Wilson v. Wilson,* 984 S.W.2d at 902–03. In such circumstances, the attorney need not be specifically appointed by the court because the attorney is generally the one instigating the proceedings anyway. The charge may proceed after the trial court reviews the petition to ensure that it is not being instituted for improper motives or without regard for justice, *Wilson v. Wilson,* 984 S.W.2d at 905, and gives the defendant notice of a show cause hearing in the matter. Tenn. R.Crim. P. 42(b).

The contempt petition in this case is based on Mr. Long's alleged violations of

the parties' marital dissolution agreement that was approved and incorporated into the trial court's October 18, 2000 divorce decree. Assuming the allegations in the complaint meet the standards outlined in *Wilson v. Wilson* and Tenn. R.Crim. P. 42(b), counsel for Ms. McAllister–Long may prosecute the criminal contempt claim. On its face, Ms. McAllister–Long's petition does not indicate that it was filed for improper motives or without regard for justice.

## III.

### MR. LONG'S OBLIGATIONS UNDER THE MARITAL DISSOLUTION AGREEMENT

■ Ms. McAllister–Long asserts that her petition to hold Mr. Long in criminal contempt complies with Tenn. R.Crim. P. 42(b) and that the trial court's construction of her petition and of the parties' marital dissolution agreement is inappropriately narrow. Mr. Long continues to insist that the trial court properly held that he could not be found in criminal contempt because the October 18, 2000 order did not obligate him to pay his share of the marital debts in a timely manner. We do not agree with

Mr. Long's cramped interpretation of the divorce decree.

### A.

■ Tennessee's current public policy favors allowing married couples to resolve their disputes and to order their affairs by agreement.[2] Accordingly, our statutes and court decisions permit and even encourage divorcing parties to resolve by agreement their disputes regarding child custody and visitation,[3] child support,[4] spousal support,[5] and the division of their marital estate.[6] These agreements, however, are not binding on the courts. In divorce proceedings, the courts must examine and evaluate each agreement and then make their own independent determination that each agreement is fair and that each agreement complies with all applicable statutory requirements.

■ Today, divorcing parties frequently use a marital dissolution agreement as the vehicle for dividing their marital estate. These agreements are contractual in the sense that they are the product of the parties' negotiation and agreement. Once the trial court approves these agreements, they become legally

2. *Barnes v. Barnes,* 193 S.W.3d 495, 498 (Tenn.2006) (noting that "agreements made respective to marriage" have been found to be valid and enforceable); *Bratton v. Bratton,* 136 S.W.3d 595, 600 (Tenn.2004) (upholding post-nuptial agreements and noting that "[i]t has long been acceptable for parties to provide for property division or support in antenuptial and reconciliation agreements based solely on their personal wishes ...''); *Hoyt v. Hoyt,* 213 Tenn. 117, 127, 372 S.W.2d 300, 304 (1963) (upholding a reconciliation agreement and noting that "bona fide agreements relating to alimony or the adjustment of property rights between husband and wife, though in contemplation of divorce or separation ... are valid'').

3. *See* Tenn.Code Ann. §§ 36–6–401(b), –404(c) (2005).

4. Tenn.Code Ann. § 36–5–101(j) (2005); Tenn. Comp. R. & Regs. 1240–2–4–.01(2)(b)(1) (2006); *A.B.C. v. A.H.,* No. E2004–00916–COA–R3–CV, 2005 WL 74106, at \*7 (Tenn.Ct.App. Jan.13, 2005) (No Tenn. R.App. P. 11 application filed).

5. *Brown v. Brown,* 198 Tenn. 600, 611–12, 281 S.W.2d 492, 498 (1955); *Anderson v. Anderson,* 810 S.W.2d 153, 154–55 (Tenn.Ct. App.1991).

6. Tenn.Code Ann. § 36–4–121(g)(1) (2005) (empowering the courts to affirm, ratify, and incorporate agreements relating to the division of the marital estate in their decrees); *Youree v. Youree,* 217 Tenn. 53, 58, 394 S.W.2d 869, 871 (1965).

binding obligations on the parties. With two notable exceptions,[7] the agreements in a marital dissolution agreement are enforceable contract obligations.[8]

To the extent that obligations in a marital dissolution agreement retain their contractual character, they should be construed and enforced like other contracts. *Barnes v. Barnes*, 193 S.W.3d at 498–99; *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn.2001). Thus, the courts' goal is to ascertain and to give effect to the parties' intentions. *Ahern v. Ahern*, 15 S.W.3d 73, 81 (Tenn.2000); *Buettner v. Buettner*, 183 S.W.3d at 358–59. Our search for the parties' intentions must begin with the language of the marital dissolution agreement itself. Each provision must be considered in light of the entire agreement, and the language of each provision should be given its natural and ordinary meaning. *Elliott v. Elliott*, 149 S.W.3d 77, 84 (Tenn.Ct.App.2004); *Davidson v. Davidson*, 916 S.W.2d 918, 922–23 (Tenn.Ct.App.1995). We should defer to the contracting process by construing the marital disagreement fairly and reasonably and by enforcing the agreement as written according to its plain terms. *Pylant v. Spivey*, 174 S.W.3d 143, 152 (Tenn.Ct.App. 2003). Because the parties are not entitled to a marital dissolution agreement that is different from the one they negotiated, we must avoid rewriting the agreement under the guise of "construing" it.

*Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561–62 (Tenn.Ct.App.2003).

A marital dissolution agreement, like any other contract, contains an implied covenant of good faith and fair dealing both in the performance and in the interpretation of the contract. *Elliott v. Elliott*, 149 S.W.3d at 84–85. While this covenant does not create new contractual rights or obligations, it protects the parties' reasonable expectations as well as their right to receive the benefits of their agreement. *Lopez v. Taylor*, 195 S.W.3d at 633. The covenant imposes a duty on the contracting parties to do nothing that will impair or destroy the rights of the other party to receive the benefits of the contract. *Elliott v. Elliott*, 149 S.W.3d at 85. As the Supreme Judicial Court of Massachusetts has explained, "[p]arties to a separation agreement stand as fiduciaries to each other, and will be held to the highest standards of good faith and fair dealing in the performance of their contractual obligations." *Krapf v. Krapf*, 439 Mass. 97, 786 N.E.2d 318, 323 (2003).

The judicial remedies for breach of a provision in a marital dissolution agreement depend on whether the provision has merged into the divorce decree and thereby remains in the court's control. Contempt is the proper remedy for the breach of provisions that remain in the court's control.[9] Both contempt and

7. The two exceptions include agreements involving child support and alimony that "merge" into the final divorce decree and remain modifiable by the courts. *See Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn.1975); *Noble v. Stubblefield*, 755 S.W.2d 454, 457 (Tenn.Ct.App.1988). However, agreements involving support for non-disabled children past the age of their majority do not merge into the divorce decree and are considered to be contracts. *Lopez v. Taylor*, 195 S.W.3d 627, 633 (Tenn.Ct.App.2005); *Bryan v. Leach*, 85 S.W.3d 136, 151 (Tenn.Ct.App.2001). Another section of this court has recently enforced a permanent alimony provision in a marital dissolution agreement as a contractual obligation. *Buettner v. Buettner*, 183 S.W.3d 354, 360–61 (Tenn.Ct.App.2005).

8. *See Barnes v. Barnes*, 193 S.W.3d at 499.

9. Basic child support for minor children and long-term alimony are examples of provisions that remain in the court's control and are subject to modification.

breach of contract are proper remedies for the breach of provisions that have been approved and incorporated but not merged into the final decree.[10] *Webber v. Olsen,* 330 Or. 189, 998 P.2d 666, 670 (2000); *Attilli v. Attilli,* 722 A.2d 268, 269 (R.I. 1999); *Irwin v. Irwin,* 47 Va.App. 287, 623 S.E.2d 438, 441, n. 4 (2005). Breaches of hold harmless agreements generally fall into the latter category. *See, e.g., Slavick v. Slavick,* No. FA980331705, 2002 WL 450948, at *4 (Conn.Super.Ct. Mar.7, 2002); *In re Marriage of Ray,* 21 Kan. App.2d 615, 905 P.2d 692, 695–96 (1995).

### B.

■ Allocating the responsibility for paying marital debts is often an integral part of dividing a divorcing couple's marital estate. *Robertson v. Robertson,* 76 S.W.3d 337, 341 (Tenn.2002). Marital debts are frequently joint debts, and while the courts have broad discretion over allocating the responsibility for paying marital debts, they cannot prejudice the rights of the parties' debtors. *Wileman v. Wade,* 665 S.W.2d 519, 520 (Tex.App.1983). In divorce proceedings, courts cannot disturb the rights of the parties' creditors to collect joint obligations from either or both of the divorcing parties. *Blake v. Amoco Fed. Credit Union,* 900 S.W.2d 108, 111 (Tex.App.1995).

■ It is not uncommon in divorce cases to turn over the ownership of a marital asset to one party while the parties remain jointly liable for the debt associated with the asset. While it is possible to order one party to make the monthly payments on a joint debt, the court cannot absolve the other party from his or her liability to the creditor. It is also unlikely that a creditor will readily agree to release a solvent debtor simply because of a divorce. Thus, if the party who has been ordered to make the monthly payments on a joint debt defaults, the other party becomes responsible for the debt and the late charges and runs the risk of damage to his or her credit rating.

Courts and lawyers have devised several ways to address this problem. The court may order, or the parties may agree, that the person awarded the property will refinance it or obtain a new loan in his or her own name and then use the proceeds to pay off the existing joint debt. The court may also order, or the parties may agree, that the property will be owned jointly until a date certain when the property must either be financed or sold. Finally, the parties or the courts may include a "hold harmless" provision in the decree or marital dissolution agreement in which the parties are required to indemnify and hold each other harmless from any and all future obligations stemming from ownership of the property they receive. This appeal involves just such a "hold harmless" provision.

■ The term "hold harmless" is synonymous with the word "indemnify." BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 436 (2d ed.1995). Accordingly, a hold harmless agreement is nothing more or less than an indemnity agreement. *Pinney v. Tarpley,* 686 S.W.2d 574, 579 (Tenn.Ct.App.1984). The concept of indemnity involves the shifting of the entire burden of liability from one person to another. The right of indemnity refers to a party's right to be protected from or to be compensated for a loss resulting from a legal action taken against the party by another.

---

10. These provisions include alimony in solido awards, provisions involving the disposition of the marital estate, and agreements for child support in excess of the support required by law.

There are two types of indemnity agreements. A contract that simply indemnifies, and nothing more, provides only "indemnity against loss." In the context of an agreement to indemnify against loss, the liability of the indemnitor does not accrue until the indemnitee has actually paid an obligation for which the indemnitee has been found liable. *Lindsey v. Jewels by Park Lane, Inc.*, 205 F.3d 1087, 1093 (8th Cir.2000); *Roebuck v. Steuart*, 76 Md.App. 298, 544 A.2d 808, 812 (1988); *Burns & McDonnell Eng'g Co. v. Torson Constr. Co.*, 834 S.W.2d 755, 758 (Mo.Ct. App.1992); *Potter v. Wilson*, 609 P.2d 1278, 1280 (Okla.1980). An indemnity against loss limits the indemnitor's liability to the amount the indemnitee was actually required to pay. *Kracman v. Ozark Elec. Coop., Inc.*, 816 S.W.2d 688, 691 (Mo.Ct. App.1991).

On the other hand, a contract that requires the indemnitor to pay certain sums of money or to perform other acts that will prevent harm or loss to the indemnitee is a contract providing "indemnity against liability." *Crestar Mortgage Corp. v. Peoples Mortgage Co.*, 818 F.Supp. 816, 821 n. 4 (E.D.Pa.1993); *Diaz v. Diaz*, 83 Ill.App.3d 341, 38 Ill.Dec. 615, 403 N.E.2d 1219, 1220 (1980) The distinction between an indemnity against liability and an indemnity against loss is that in the former, the essence of the contract is that the event shall not occur while in the latter, the indemnity is against the consequences of the event if it should happen. *Carson Harbor Village, Ltd. v. Unocal Corp.*, 287 F.Supp.2d 1118, 1195 (C.D.Cal. 2003). As Chancellor Cooper held over one hundred twenty-five years ago:

> But the promise was: "You shall never be held liable upon the bond, or annoyed about it in any way," which is a promise to indemnify *against liability*. The rule upon such an obligation is that the right

of action accrues as soon as the party becomes liable to pay, and it is not postponed until actual payment.

*Macey v. Childress*, 2 Tenn. Ch. 438, 443 (1875).

A hold harmless agreement such as the one involved in this case is generally classified as an indemnity against liability. *See, e.g., Riedel v. Riedel*, 844 P.2d 184, 186 n. 7 (Okla.Ct.App.1992). Parties can be compelled to honor these agreements by contempt. *See, e.g., Arel v. Arel*, No. FA030734651S, 2006 WL 490611, at *1–2 (Conn.Super.Ct. Feb.16, 2006); *Rogers v. McGahee*, 278 Ga. 287, 602 S.E.2d 582, 584 (2004); *In re Marriage of Ramos*, 126 Ill.App.3d 391, 81 Ill.Dec. 214, 466 N.E.2d 1016, 1020 (1984); *Miller v. Miller*, No. WD–00–063, 2001 WL 709115, at *2–3 (Ohio Ct.App. June 22, 2001).

## C.

Determining whether a particular agreement provides indemnity against loss or indemnity against liability requires the courts not only to construe the agreement as a whole but also to consider the posture of the parties and the circumstances existing when they made the agreement. *Lindsey v. Jewels by Park Lane, Inc.*, 205 F.3d at 1093. The courts should give the words of the indemnity agreement their natural and ordinary meanings, *MacGlashing v. Dunlop Equip. Co.*, 89 F.3d 932, 938 (1st Cir.1996); *American Agric. Chem. Co. v. Tampa Armature Works, Inc.*, 315 F.2d 856, 859 (5th Cir. 1963); *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn.1985), and must give meaning and effect to every provision of the agreement. *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 256 Ill.App.3d 31, 195 Ill.Dec. 701, 628 N.E.2d 1165, 1168 (1993).

The parties' marital dissolution agreement drafted by Mr. Long plainly obligates him to be responsible for several marital debts. Because Mr. Long received the parties' marital home, he agreed in paragraph six "to hold ... [Ms. McAllister–Long] harmless for the same." In paragraph eight, Ms. McAllister–Long received her diamond rings and a Jaguar automobile as alimony in solido, and Mr. Long agreed to "continue to make the payments ... until they are paid in full" and "to hold ... [Ms. McAllister–Long] harmless on both of these debts." In addition to these specific provisions, in paragraph nine which deals with the parties' debts, both Mr. Long and Ms. McAllister–Long agreed "to be responsible for any indebtedness incurred in his/her own name, unless specifically provided for otherwise herein, and each agrees to hold the other party harmless for same."

One other paragraph of the marital dissolution agreement is relevant. In paragraph eleven, the parties acknowledge that the agreement makes them responsible "for [the] payment of certain debts and liabilities" as well as "to hold the other harmless for the payment ... [of these debts and liabilities]." This paragraph also provides that "[i]n the event a creditor of either party seeks to compel the other party to pay any debt for which that party is not responsible ... the party against whom such claim is made shall be entitled to recover the amount of any payment he/she makes, including interest, and any expenses, including but not limited to attorney's fees, incurred in defending the creditor's claim."

We have determined that the trial court erred when it concluded that the marital dissolution agreement did not require Mr. Long to pay the indebtedness on the house he received as part of the division of marital property or to make timely payments on the mortgage debt or the debt associated with the Jaguar automobile. The plain language of the agreement required Mr. Long not only to pay these debts but also to hold Ms. McAllister–Long harmless should he fail to do so. Because the marital dissolution agreement obligates Mr. Long to deal with Ms. McAllister–Long fairly and in good faith, his "hold harmless" obligation arose before the parties' creditors required Ms. McAllister–Long to pay the debts that had been assigned to Mr. Long. The agreement required Mr. Long to pay these debts in a timely manner in order to prevent Ms. McAllister–Long from being harmed. Receiving dunning letters and risking adverse effects on her credit rating are among the types of harm that entitle Ms. McAllister–Long to ask the trial court to enforce Mr. Long's obligations to pay the debts the marital dissolution agreement required him to pay.

## IV.

### THE PETITION'S COMPLIANCE WITH TENN. R.CRIM. P. 42(B)

■ Mr. Long also asserts that Ms. McAllister–Long's petition to hold him in criminal contempt is invalid because it does not satisfy the notice requirements of Tenn. R.Crim. P. 42(b). Ms. McAllister–Long responds that her petition not only informs Mr. Long that he is being charged with criminal contempt but also apprises him of the conduct that gives rise to these charges. We have concluded that Ms. McAllister–Long's petition satisfies all the requirements of Tenn. R.Crim. P. 42(b).

■ Sanctions for criminal contempt are punitive in character, and their primary purpose is to vindicate the court's authority. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn.2003); *Black v. Blount*, 938 S.W.2d at 398. Criminal contempt sanctions are imposed sim-

ply as punishment, *Ahern v. Ahern,* 15 S.W.3d at 79, and persons imprisoned for criminal contempt cannot be freed by eventual compliance with the court's orders. *Robinson v. Fulliton,* 140 S.W.3d 304, 310 (Tenn.Ct.App.2003). Unless the contemptuous act was committed in the presence of the court,[11] proceedings for criminal contempt must comply with Tenn. R.Crim. P. 42(b). Persons charged with criminal contempt are presumed innocent and may not be found to be in criminal contempt in the absence of proof beyond a reasonable doubt that they have willfully failed to comply with the court's order. *Black v. Blount,* 938 S.W.2d at 398; *Thigpen v. Thigpen,* 874 S.W.2d 51, 53 (Tenn. Ct.App.1993).

 Tenn. R.Crim. P. 42(b) requires that parties facing a criminal contempt charge be given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge. *Sims v. Williams,* No. M2004–02532–COA–R3–CV, 2006 WL 223694 at *4 (Tenn.Ct.App. Jan.27, 2006) (No Tenn. R.App. P. 11 application filed); *Weissfeld v. Weissfeld,* No. E2004–00134–COA–R3–CV, 2004 WL 2070979 at *3 (Tenn.Ct.App. Sept.16, 2004) (No Tenn. R.App. P. 11 application filed); *Jones v. Jones,* No. 01A01–9607–CV–00346, 1997 WL 80029, at *3–4 (Tenn.Ct. App. Feb.26, 1997) (No Tenn. R.App. P. 11 application filed); *Storey v. Storey,* 835 S.W.2d 593, 600 (Tenn.Ct.App.1992). While parties seeking to hold another in criminal contempt should draft their petitions to comply with Tenn. R.Crim. P. 42(b)'s notice requirements, the court in which a petition for criminal contempt is filed must, in the final analysis, assure that the accused party receives adequate notice of the charges he or she faces. *McPherson v. McPherson,* No. M2003–02677–COA–R3–CV, 2005 WL 3479630 at *5 (Tenn.Ct. App. Dec.19, 2005) (No Tenn. R.App. P. 11 application filed); Tenn. R.Crim. P. 42(b).

 Adequate notice is notice that is clear and unambiguous to the average citizen. *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 446, 31 S.Ct. 492, 500, 55 L.Ed. 797 (1911); *Jones v. Jones,* 1997 WL 80029 at *4. Because the same conduct can constitute both civil contempt and criminal contempt and because both contempt proceedings may carry with them the possibility of incarceration, it is imperative that notice specifically charge a party with criminal contempt. *Jones v. Jones,* 1997 WL 80029 at *2–3. Adequate notice encompasses, but is not limited to, the mandates of Tenn R.Crim. P. 42(b), which require that notice state the time and place of the hearing, allow the defendant reasonable time to prepare a defense, and state succinctly for the accused the "essential facts" constituting the charge. *See Jones v. Jones,* 1997 WL 80029 at *3. Essential facts are those which, at a minimum, (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment— not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the

---

11. Criminal contempt is either direct or indirect. Disruptive or disobedient acts committed in the court's presence constitute direct criminal contempt. Tenn.Code Ann. § 29–9–102(1) (2000); *Black v. Blount,* 938 S.W.2d at 398; *State v. Maddux,* 571 S.W.2d 819, 821 (Tenn.1978). Courts may impose summary punishment for these acts when there is a need to act expeditiously to prevent contumacious conduct from disrupting a judicial proceeding. *State v. Turner,* 914 S.W.2d 951, 956 (Tenn.Crim.App.1995). Contemptuous acts committed outside the court's presence constitute indirect criminal contempt. *State v. Maddux,* 571 S.W.2d at 821.

nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous. *See Gompers v. Buck's Stove & Range Co.,* 221 U.S. at 446, 31 S.Ct. at 500; *Doe v. Bd. of Prof'l Responsibility,* 104 S.W.3d at 471; *McPherson v. McPherson,* 2005 WL 3479630 at *5; *Jones v. Jones,* 1997 WL 80029 at *3.

Ms. McAllister–Long's contempt petition alleges that the trial court's October 18, 2000 divorce decree ordered Mr. Long to hold her harmless from the mortgage on the former marital residence and that she had been damaged by his repeated failure to pay the mortgage in a timely fashion. It also alleges that the divorce decree ordered Mr. Long to pay and hold her harmless on the loan to purchase the Jaguar automobile. The petition explicitly requests that Mr. Long be held in criminal contempt and includes a list of rights of persons accused of criminal contempt.

The allegations in Ms. McAllister–Long's contempt petition certainly qualify as essential facts succinctly stated in conformity with Tenn. R.Crim. P. 42(b). They also comply with Tenn. R. Civ. P. 8.05 which requires that civil pleadings be simple, concise and direct and that they set forth the manner in which a violation is claimed. There is no question that Mr. Long knew the nature of the proceeding he was facing. Furthermore, assuming the allegations in Ms. McAllister–Long's petition are true, the allegations are sufficient to support a finding of criminal contempt. While we understand the trial court's insistence that criminal contempt proceedings not go forth if they do not comply with Tenn. R.Crim. P. 42(b), the

petition at issue in this case complies with Tenn. R.Crim. P. 42(b) in all respects.

## V.

Having determined that Ms. McAllister–Long's petition alleges that Mr. Long has willfully violated a court order and that the petition complies with the notice requirements in Tenn. R.Crim. P. 42(b),[12] we reverse the dismissal of the petition and remand the case to the trial court for further proceedings consistent with Tenn. R.Crim. P. 42(b), as well as *Wilson v. Wilson* and *Black v. Blount.* We tax the costs of this appeal to Fletcher Whaley Long for which execution, if necessary, may issue.

---

12. Because we have determined that Ms. McAllister–Long's petition is facially valid, we need not address Ms. McAllister–Long's contention that the trial court erred by denying her motion to amend her petition.