IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 8, 2013

## ANDREW DOUGLAS SPRAGUE v. MARY NELLE SPRAGUE

**Appeal from the Circuit Court for Hamilton County**
**No. 08D1121     W. Jeffrey Hollingsworth, Judge**

_____

**No. E2012-01133-COA-R3-CV - Filed June 18, 2013**

_____

In this post-divorce case, the issues are twofold:  whether the trial court erred in awarding Mary Nelle Sprague ("Mother") a judgment against her former spouse, Andrew Douglas Sprague ("Father"), in the amount of $5,604.65 for uncovered medical expenses pursuant to the terms of the parties' parenting plan; and whether the trial court erred in the process of holding Father in criminal contempt of court.  We modify the medical expense award by decreasing it to $2,124.32, the amount claimed by Mother and the amount established by the proof.  Further, we reverse the criminal contempt finding because Father was not provided adequate notice of the criminal contempt charges as required by Tenn. R. Crim. P. 42(b).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed in Part and Modified in Part; Otherwise Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Michele L. Coffman, Chattanooga, Tennessee, for the appellant, Andrew Douglas Sprague.

Sandra J. Bott, Chattanooga, Tennessee, for the appellee, Mary Nelle Sprague.

**OPINION**

I.

Father and Mother were divorced by final judgment entered June 2, 2009.  The judgment incorporates the parties' marital dissolution agreement and their agreed permanent parenting plan as to two minor children: a son, Aiden Foster Sprague, now age 7, and a daughter, Kieren McCall Sprague, age 5.  Mother was designated as the primary residential

parent and Father was ordered to pay child support of $836 per month. The plan provides that the parties are to jointly make major decisions regarding the children's education, non-emergency health needs, religious upbringing, and extracurricular activities, but that "[i]f no decision can be made jointly, Mother will have the tiebreaking vote." The order further requires Father to maintain health insurance for the children and $250,000 of life insurance for the benefit of the children with Mother being the children's trustee. The parties were each required to pay for medical expenses not covered by insurance on a pro rata basis in accordance with their incomes, which resulted in Father being responsible for paying 47% and Mother 53% of these expenses.

On September 17, 2009, Mother filed a petition for contempt alleging that Father had violated the parenting plan in the following ways: (1) failing to timely pay child support; (2) cohabitating with his girlfriend in violation of the provision that "[n]either parent shall have the children overnight in the presence of an unrelated member of the opposite sex," (3) exposing the children to animal dander in violation of the order's express prohibition because of Aiden's severe asthma; (4) failing to provide proof of life insurance; (5) failing to provide dental and optical insurance coverage; and (6) failing to pay his share of the children's uncovered medical expenses. Father answered and filed a counterclaim for contempt. Mother filed a motion asking the court to suspend Father's residential time with the children or to require supervised visitation because Father had "expos[ed] the children to an indoor cat, causing the children to suffer continual allergic reactions." The trial court entered an order on January 27, 2010, reflecting Mother's agreement to withdraw her motion "based upon [Father's] agreement to remove the cat from his residence." The trial court further ordered Father to pay Mother "a sum representing four months of child support arrearages," and ordered the parties to attend mediation to resolve the remaining issues. Following mediation, the trial court entered an order on March 3, 2010, incorporating the parties' agreement that required, among other things, the parties to provide each other with proof of uncovered medical expenses and required Father to "provide proof of medical insurance and life insurance coverage of $250,000 with the children as the minor beneficiaries[.]" The agreed order granted Mother a judgment in the amount of $3,387.50 "for medical arrearages."

On September 13, 2010, Mother filed another petition for contempt alleging that Father (1) "has refused to provide sufficient healthcare insurance information for the minor children covered under his current wife['s policy]"; (2) is "ordering generic prescriptions for the children when their treating [p]ediatrician specifically stated to only use brand-name prescriptions"; (3) "continues to pay child support in an untimely manner"; (4) "failed to provide any proof to [Mother] that he has complied with the life insurance coverage [requirement] for the benefit of the parties' minor children"; and (5) "failed to reimburse [Mother] for the medical bills for minor children submitted to" him. Father responded with

another "[counterclaim] for contempt or modification of [the] parenting plan." He later voluntarily dismissed the counterclaim. The court held a hearing in March 2011 on the portions of Mother's contempt petition seeking injunctive relief. On April 14, 2011, the trial court entered an order finding, in pertinent part, the following:

> [Father] shall not take the parties' minor children to any healthcare professional other than the children's current treating physicians . . . . neither party will change any medication either child is currently taking unless it is by order of the treating physician; that both parties will administer to the children only those medications which have been prescribed by the treating physician and neither party shall attempt to influence or prompt a treating physician to prescribe generic versus name-brand medications for the parties' children. Both parties will immediately notify the other of any changes in medications which have been ordered by treating physicians and promptly notify one another of doctor[']s appointments.

(Paragraph numbering in original omitted.)

A further hearing took place on December 12, 2011. Both parties testified and provided voluminous documents regarding medical expenses each had incurred for the children's care, which expenses were substantial because Aiden suffers from severe asthma and Kieren, who was three years old at the time of the hearing, suffers from epilepsy. The trial court entered an order February 2, 2012, finding as follows in pertinent part:

> This case has a long and tortured history of petitions for contempt, agreements reached at mediation, orders incorporating agreements reached at mediation and additional petitions for contempt, alleging breach of those agreements.
>
> *       *       *
>
> Upon review of the testimony given at all of the hearings and the orders and agreements entered, one thing has become clear. The Father has been in willful contempt of this Court's orders. There is a consistent pattern of the Father failing or refusing to comply with court orders, which bring about petitions for contempt. The Father then goes to mediation and agrees to comply, to avoid a hearing. Then, after the agreed order is

-3-

entered and the hearing cancelled, the Father goes back to his previous behavior. The Court finds that [Father] is in willful contempt of this Court for violation of several orders. The Court is going to reserve punishment on that contempt in the hope that the parties can cooperate and avoid the necessity of imposing punishment, which could include incarceration.

The trial court granted Mother a judgment against Father in the amount of $5,604.65 for "the Father's share of uncovered medical expenses incurred since the previous judgment noted in the March, 2010 order." The court also entered a wage assignment order directing Father's employer to withhold from his earnings a child support payment in the amount of $385.85 every two weeks. Father timely filed a notice of appeal.

II.

Father raises two issues for our consideration:

1. Whether the trial court erred in granting Mother a judgment against Father in amount of $5,604.65 for his share of uncovered medical expenses.
2. Whether the trial court erred in holding Father in willful contempt of court.

III.

In this non-jury case, our standard of review is de novo upon the record of the proceedings below; however, the record comes to us with a presumption of correctness as to the trial court's factual determinations, a presumption we must honor unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is no presumption of correctness as to the trial court's conclusions of law. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002); *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). In this case, the determinative issue on the court's contempt finding is whether, pursuant to the provisions of Tenn. R. Crim. P. 42, Father had sufficient notice that he was facing a charge of criminal contempt. This is a question of law. *State ex rel. Farris v. Bryant*, No. E2008-02597-COA-R3-CV, 2011 WL 676162 at *5 (Tenn. Ct. App. W.S., filed Feb. 24, 2011) ("The issues regarding the sufficiency of the contempt notice given to Father present questions of law.").

-4-

IV.

A.

We first address the correctness of the trial court's order awarding Mother $5,604.65 for Father's share of uncovered medical expenses. Father argues that the evidence preponderates against the amount of the award. We agree and modify the award to $2,124.32, the total amount claimed by Mother for uncovered medical expenses. We also note that this is the amount established by the proof at trial. Both Mother and Father testified regarding the amount of medical expenses they had incurred for the children's care. The parties agreed that, pursuant to the divorce judgment, Mother was responsible for 53% and Father responsible for 47% of these expenses. They disagreed on many other things, including whether certain prescription costs for medications were necessary or duplicative, whether Father had willfully ordered generic medications instead of name-brand as ordered by the children's doctors, and whether each party had provided sufficient and timely proof of expenses to the other. Each party submitted extensive documentation in support of his or her claim of incurred medical expenses.

Mother testified as follows regarding her claim against Father for his portion of the uncovered medical expenses:

> Q: Have you prepared and did we furnish several weeks ago to [Father's] counsel . . . a spreadsheet indicating what you have paid with regard to the medical expenses for the children and what you believe [Father] has paid?
>
> A: Yes.
>
> Q: And is this, in fact, the spreadsheet?
>
> A: Yes.
>
> Q: And is there a bottom line to this as to how much you feel you are owed?
>
> A: The difference at this point after [Father] in November submitted everything that I had not received up to that point, it's $2,124.32.

Mother proffered her spreadsheet itemizing the medical expenses into evidence and it was admitted as an exhibit. The spreadsheet summarizes the total expenses she incurred during the time period at issue as $7,075.21 and the total expenses credited to Father as $3,813.78. According to Mother's testimony, and her spreadsheet, the difference between what Father actually paid and what he should have paid for uncovered medical expenses was $2,124.32.

Father submitted a similar spreadsheet that was also admitted into evidence. According to Father's testimony, he incurred $6,500.82 in uncovered medical expenses and Mother incurred $5,604.65. The trial court's judgment awarding Mother $5,604.65 indicates that the court incorrectly based its judgment on Father's calculation of the *gross* expenses incurred by Mother rather than basing the award on Father's pro rata share of expenses as calculated by Mother. Construing all of the evidence most favorably to Mother, the evidence preponderates in favor of a maximum award of the full amount claimed by her – $2,124.32. We therefore modify the trial court's award to Mother for uncovered medical expenses and award her a judgment for $2,124.32 and affirm as modified.

B.

We next address the legality of the trial court's order holding Father in contempt of court. In addition to the language quoted in part I above, the trial court's order states that "[t]he Father is found to be in contempt of court. The issue of punishment of that contempt is withheld and will be determined based on the Father's compliance with this Order." The trial court entered no other findings of fact regarding its contempt ruling. On appeal, Father argues that he was not provided adequate notice that he was being charged with criminal contempt and that the contempt finding must be reversed for lack of compliance with the notice requirements of Tenn. R. Crim. P. 42. We agree and reverse the contempt ruling.

There are two kinds of contempt – civil and criminal. *State v. Beeler*, 387 S.W.3d 511, 520 (Tenn. 2012); *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). Generally speaking, a court's classification of contempt as civil or criminal "depend[s] upon the action taken by the court to address the contempt." *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000). "Civil contempt is remedial in character and usually employed to compel obedience to a court order." *Beeler*, 387 S.W.3d at 510; *see Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 473 (Tenn. 2003). As stated by the Supreme Court, penalties for civil contempt are coercive and a contemnor may avoid or end them by complying with the court's order:

> If the contemnor has refused to perform an act mandated by the court's order and the contemnor has the ability to comply with the order at the time of the contempt hearing, the court may fine or imprison the contemnor until the act is performed. Tenn.

> Code Ann. § 29–9–104 (1980 & 2000); *see Ahern*, 15 S.W.3d
> at 79. Thus, the contemnor possesses the "keys to the jail" and
> can purge the contempt through compliance with the court's
> order. *Id.*

*Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 511 (Tenn. 2005).

In contrast to civil contempt, criminal contempt is "punitive in character" and "intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society." *Beeler*, 387 S.W.3d at 520 (internal quotation marks omitted). "A party who is in criminal contempt cannot be freed by eventual compliance." *Ahern*, 15 S.W.3d at 79; *see also Black*, 938 S.W.2d at 398 (observing that "sanctions for criminal contempt are generally both punitive and unconditional in nature"). The Supreme Court has recently "cautioned that criminal contempt charges should be used sparingly." *Beeler*, 387 S.W.3d at 520. Although the "power to punish for contempt has long been regarded as essential to the protection and existence of the courts and the proper administration of justice . . . the courts' contempt power is now purely statutory." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354 (Tenn. 2008); *see* Tenn. Code Ann. § 29-9-101 to -108 (2012).

This court has observed that "[t]he threshold issue in every appeal from a finding of contempt is whether the contempt is civil or criminal." *Jones v. Jones*, 01A01-9607-CV-00346, 1997 WL 80029 at *2 (Tenn. Ct. App. M.S., filed Feb. 26, 1997). The trial court did not specify in this case whether Father's contempt was criminal or civil. It is clear, however, that the court's finding was for criminal contempt. The contempt holding was not conditioned on Father correcting or remedying a failure to comply with a past order, nor was Father given an opportunity to purge his contempt. *See Ahern*, 15 S.W.3d at 79 (noting that with civil contempt, one "can purge the contempt by complying with the court's order"). The trial court's order found Father in contempt but stated that it "was going to reserve punishment on that contempt." Thus, although the court did not impose any punishment on Father, its action in "reserving punishment" pending "Father's compliance with [the court order finding him in contempt]" is tantamount to the imposition of a suspended sentence. We have recently observed that "[i]t is not unusual for a court that has found an individual in criminal contempt for violating its order to suspend a sentence imposed as a sanction for that contempt." *Coffey v. Coffey*, E2012-00143-COA-R3-CV, 2013 WL 1279410 at *8 (Tenn. Ct. App. E.S., filed March 28, 2013). We have further stated on several occasions that "[t]here is no such thing as a suspended sentence for civil contempt." *State, DHS v. Thomason*, E2005-00327-COA-R3-JV, 2006 WL 770468 at *3 (Tenn. Ct. App. E.S., filed March 27, 2006) (quoting *Mayer v. Mayer*, 532 S.W.2d 54, 60 (Tenn. Ct. App. 1975));

*Haynes v. Haynes*, 904 S.W.2d 118, 122 (Tenn. Ct. App. 1995). We hold that the trial court held Father in criminal contempt.

"Contempt is categorized as 'direct' or 'indirect,' depending on whether the misbehavior occurred in the court's presence." *Beeler*, 387 S.W.3d at 520. Because the trial court held Father in criminal contempt for actions that occurred *outside* the court's presence, the contempt was indirect, and it was incumbent upon the court to ensure that the notice and procedural due process requirements of Tenn. R. Crim. P. 42(b) were satisfied. When an accused is charged with indirect criminal contempt, as in the present case, "proceedings for criminal contempt must comply with Tenn. R. Crim. P. 42(b)," *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006), which provides as follows:

> (b) DISPOSITION ON NOTICE AND HEARING. A criminal contempt shall be prosecuted on notice, except as provided in subdivision (a) of this rule.[1]
>
> (1) CONTENT OF NOTICE. The criminal contempt notice shall:
>
> (A) state the time and place of the hearing;
>
> (B) allow the defendant a reasonable time to prepare a defense; and
>
> (C) state the essential facts constituting the criminal contempt charged and describe it as such.
>
> (2) FORM OF NOTICE. The judge shall give the notice orally in open court in the presence of the defendant or, on application of the district attorney general or of an attorney appointed by the court for that purpose, by a show cause or arrest order.

(Capitalization in original.) The court in *Long* examined Rule 42's notice requirements at length, providing the following guiding principles in pertinent part:

> Tenn. R. Crim. P. 42(b) requires that parties facing a criminal contempt charge be given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge. While parties seeking to hold another

---

[1] Subdivision (a) pertains to direct criminal contempt and thus is inapplicable here.

in criminal contempt should draft their petitions to comply with Tenn. R. Crim. P. 42(b)'s notice requirements, the court in which a petition for criminal contempt is filed must, in the final analysis, assure that the accused party receives adequate notice of the charges he or she faces.

Adequate notice is notice that is clear and unambiguous to the average citizen. Because the same conduct can constitute both civil contempt and criminal contempt and because both contempt proceedings may carry with them the possibility of incarceration, it is imperative that notice specifically charge a party with criminal contempt. Adequate notice encompasses, but is not limited to, the mandates of Tenn R. Crim. P. 42(b), which require that notice state the time and place of the hearing, allow the defendant reasonable time to prepare a defense, and state succinctly for the accused the "essential facts" constituting the charge. Essential facts are those which, at a minimum, (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment—not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous.

*Long*, 221 S.W.3d at 13-14 (internal citations omitted).

This court has quite frequently reversed a finding of criminal contempt for failure to comply with Rule 42(b)'s notice requirements. *See, e.g., **Bailey v. Crum***, 183 S.W.3d 383, 387-89 (Tenn. Ct. App. 2005); ***Storey v. Storey***, 835 S.W.2d 593, 599-600 (Tenn. Ct. App. 1992).[2] In this case, we must again reverse, for the same reasons stated in ***Bailey, Storey***, and

_____

[2] *See also **State ex rel. Farris v. Bryant***, E2008-02597-COA-R3-CV, 2011 WL 676162 at *6-7 (Tenn. Ct. App. W.S., filed Feb. 24, 2011); ***Brown v. Batey***, M2009-02020-COA-R3-JV, 2010 WL 3155189 at *4-5 (Tenn. Ct. App. E.S., filed Aug. 9, 2010); ***McLean v. McLean***, E2008-02796-COA-R3-CV, 2010 WL 2160752 at *5-6 (Tenn. Ct. App. E.S., filed May 28, 2010); ***Sims v. Williams***, M2004-02532-COA-R3-CV, 2006 WL 223694 at *4-5 (Tenn. Ct. App. M.S., filed Jan. 27, 2006); ***McPherson v. McPherson***, M2003-02677-COA-R3-CV, 2005 WL 3479630 at *5 (Tenn. Ct. App. M.S., filed Dec. 19, 2005); ***Weissfeld v. Weissfeld***, E2004-00134-COA-R3-CV, 2004 WL 2070979 at *4-5 (Tenn. Ct. App. E.S., filed Sept. 16, (continued...)

the ten unreported cases cited in footnote 2. Father was not afforded sufficient notice that he was charged with criminal contempt. He was not "given explicit notice that [he was] charged with criminal contempt," nor was he "informed of the facts giving rise to the charge." ***Long***, 221 S.W.3d at 13. None of the pleadings notified Father that he was being tried for criminal contempt. Neither did the show cause orders issued by the trial court, which ordered Father to appear and show cause "why he would not be held in contempt of court." There is nothing in the record suggesting that the mandate of Tenn. R. Crim. P. 42(b)(1)(C), which requires notice that "state[s] the essential facts constituting the criminal contempt charged and describe[s] it as such," was satisfied here. Nor can we say that under the circumstances, "it is clear that [Father] knew he was facing serious charges of criminal contempt." *See **LaDue v. LaDue***, E2004-02481-COA-R3-CV, 2005 WL 2043524 at *4 (Tenn. Ct. App. E.S., filed Aug. 25, 2005) (holding sufficient Rule 42 notice under totality of the circumstances).

Mother argues that Father waived his argument of insufficient notice by failing to present it to the trial court in his post-trial motion to alter or amend. In ***Simerly v. Norris***, the Court of Criminal Appeals reversed a conviction of criminal contempt for "failure of the notice to identify the proceeding as criminal contempt," and addressed the waiver issue as follows:

> Appellant did not challenge the sufficiency of the notice by motion, and we have explored the question of whether he waived the defect. We think a charge of criminal contempt is subject to the same rules as other criminal charges insofar as the time to raise objections for defects in the notice is concerned. Objections not raised before trial are waived, except where the notice fails to . . . charge an offense. The latter objections may be raised any time. Tennessee Rule of Criminal Procedure 12(b)(2).

> The notice itself being deficient and there being no facts or circumstances that will supply or excuse the deficiency, it follows that the notice fails to charge an offense. Appellant may raise the objection here.

[2](...continued)
2004); ***Jones***, 1997 WL 80029 at *3-4; ***Sanders v. Sanders***, 01A01-9601-GS-00021, 1997 WL 15228 at *2-3 (Tenn. Ct. App. M.S., filed Jan. 17, 1997); ***Pritchard v. Pritchard***, 02A01-9505-CH-00108, 1996 WL 266653 at *2 (Tenn. Ct. App. W.S., filed May 15, 1996); ***Walker v. Walker***, 02A01-9209-CH-00263, 1993 WL 327826 at *3-4 (Tenn. Ct. App. W.S., filed Aug. 20, 1993).

***Simerly***, No. 1071, 1987 WL 8315 at *9 (Tenn. Crim. App., filed March 26, 1987). Furthermore, in ***Cooner v. Cooner***, this court addressed the issue of whether "a person accused of criminal contempt [who] files an answer to the petition for contempt and appears for trial with counsel who presents no demand for due process" thereby waives the issue of due process. We concluded that "the constitutional right of due process requires that the sentence in the present case be vacated and that the cause be remanded with direction to dismiss the petition for criminal contempt." ***Cooner***, 01A01-9701-CV-00021, 1997 WL 625277 at *10-11 (Tenn. Ct. App. E.S., filed Oct. 10, 1997). We likewise conclude that Father in this case did not waive his due process claim of lack of notice charging an offense and that he may raise the issue of lack of notice on appeal. In light of our holdings, Mother's request to find this appeal frivolous is denied.

V.

The judgment of the trial court holding Father in criminal contempt is reversed and the petition for contempt is dismissed. The trial court's award to Mother for uncovered medical expenses is modified to $2,124.32 and affirmed as modified. Costs on appeal are taxed to the appellee, Mary Nelle Sprague. The case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment as modified and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE