IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 11, 2009 Session

## ERIN McLEAN v. JASON ERIC McLEAN

**Appeal from the Circuit Court for Knox County**
**No. 108135      Bill Swann, Judge**

_____

**No. E2008-02796-COA-R3-CV - FILED MAY 28, 2010**

_____

This appeal arises from a post-divorce case in which the trial court found the appellant to be in criminal contempt.  Procedural deficiencies by the trial court require reversal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J. and D. MICHAEL SWINEY, J., joined.

Brandy B. Slaybaugh, Knoxville, Tennessee, for the appellant, Erin McLean.

James S. Sharp, Jr., Knoxville, Tennessee, for the appellee, Jason Eric McLean.

## OPINION

On March 10, 2007, Erin McLean ("Mother") witnessed her husband, Jason Eric McLean ("Father"), shoot and kill 18-year-old Sean Powell[1] in the driveway of the marital home.  Father was arrested and Mother fled with her two minor children to the home of her mother in Nashville.

Father filed a complaint for divorce, alleging irreconcilable differences and inappropriate marital conduct.  In mid-September 2007, Mother and the children moved from Nashville to Austin, Texas.  During this time, the family's story drew the continuing attention

_____

[1]Mother was apparently having a relationship with Mr. Powell, one of her students from a local high school.

of the national media.

In January 2008, the trial court granted Father an absolute divorce. The order approved and incorporated Father's permanent parenting plan and granted him sole ownership of the marital home. The "non-resident notice was published for four consecutive weeks in the Knoxville News Sentinel, the Knoxville Journal, and the Knoxville Independent."

On February 1, 2008, the trial court issued an interim memorandum opinion which altered parts of the divorce decree. The trial court granted Father temporary custody, stating

> [W]e do have the father's testimony as to the mother's present attention to the children. The court finds that she has wrongfully removed the children from the jurisdiction of this court. This is the only court which has subject matter jurisdiction over the children. The mother herself does not appear today to tell us what her plan for the children is, or why she should be the custodial parent, if indeed that is her goal.
>
> The father however is here, and tells us his history as a parent and his plans for the children. Of the two parents, he is the only one respecting the authority of the court. Therefore, he is favored by the court's order today. . . .

The court's order provided that it was a temporary ruling "until we can have a full hearing as to the best interests of these children."

The day-to-day schedule of the temporary parenting plan stated that "the parties shall alternate co-parenting time with the minor children on a week on/week off basis." The plan contained no start or stop date. The February 1, 2008, interim order also appointed a guardian ad litem ("GAL") to take steps "to secure the safety and well being of the children."

According to Mother, the GAL was able to contact her via email within weeks, in contrast to affidavits of Father and his attorney in which they declared they could not find Mother. Mother complied with the GAL's request and willingly brought the children to meet with her in Greenback, Tennessee, on March 8, 2008.

On September 24, 2008, Father filed a motion for writ of attachment and contempt, charging that Mother was in violation of the temporary parenting plan. On that day, the trial court issued a writ of attachment to remove the children from Texas. The court added a handwritten fiat that ordered "the mother to appear and show why she should not be held in contempt of court for willfully ignoring court orders [regarding] co-parenting time."

On October 1, 2008, the children were picked up by police officers from their respective schools in Texas. A hearing was conducted telephonically in Tennessee and Texas. Mother, unrepresented at that time, arrived at the hearing after it had started. She raised objections to the claims of Father's attorney that she had been served, that she had notice of the parenting plan, and that she willfully withheld visitation. The Texas court ordered the children returned to Tennessee and placed them temporarily in the custody of their paternal grandmother. The Tennessee trial court prohibited both Mother and Father from having contact with the children until recommended by the GAL or approved by the trial court.

On October 8, 2008, Mother made her first appearance in the trial court, represented by current counsel. Mother contends there was much confusion as to the actual purpose of this hearing. At the hearing, she was served with the petition for criminal contempt asserting that she had violated the October 1 order by contacting the children via text message. During this hearing, the trial court requested that Father's counsel draft and submit a "Show Cause" based on Father's lack of co-parenting time. Five days later, Father filed a petition for contempt and show cause based on Mother withholding co-parenting time. On that same date, Mother also responded to the October 8, 2008, petition for criminal contempt. She admitted to having two contacts with her children, but denied that the contacts were willful. According to Mother, the children spoke to her two times during conversations they had with her fiancé. She denied sending any text messages to her sons. Mother noted that her fiancé was not under a no contact order and that the children had been in communication with him.

In the hearing held on December 15, 2008, Mother invoked her right against self-incrimination on several occasions. The trial court found, through testimony supplied by the GAL, that Mother first had actual notice of the temporary parenting plan sometime during March 2008, when the GAL e-mailed it to Mother. The court held as follows:

We have in the pleadings admissions to two violations of conversations with the children in violation of that which was specifically ordered by this Judgment on 10-1-08. "Mother and Father are prohibited from having contact with the children until recommended by the Guardian Ad Litem or approved by this Court." Mother concedes in her own pleadings two contacts. So, that's two counts proved beyond a reasonable doubt. Ten days of incarceration is imposed for each of those. That's a total of twenty days there. As to these fifteen counts [of contempt of court for failing to provide Father visitation], the Court finds beyond a reasonable doubt fifteen counts of denial, and pronounces a sentence of one hundred and fifty days of incarceration. However, only seventy-five of that will be served and seventy-five will be suspended, conditional upon exact and strict compliance with all Court Orders

by Erin McLean hereafter.  So, that makes a total of ninety-five days to serve with seventy-five suspended. . . .

Mother filed a timely appeal.  Father has not filed a brief in this court.

## II.  ISSUES

Mother raised the following issues:

A.  Whether the trial court's refusal to set a bond for Mother upon a finding of indirect criminal contempt violates Tenn. R. Crim. P. 32(d)(1) and Tenn. R. Crim. P. 42(b)(3).

B.   Whether the trial court erred in finding Mother guilty of 17 counts of criminal contempt and sentencing Mother to 95 days of incarceration where:

> 1.  The trial court failed to give Mother oral notice of the criminal contempt sanctions in open court;
>
> 2.  The criminal contempt petition filed on October 13, 2008, lacked the essential facts constituting the criminal contempt charged and failed to describe said facts, nor notice of the 1070 days requested at trial;
>
> 3.  Mother was not afforded the constitutional protection of a presumption of innocence in that exercising her right to the protection of the Fifth Amendment was used against her;
>
> 4.   The temporary parenting plan on which the contempt conviction is based is an improper order entered without the required best interest analysis.

## III.  STANDARD OF REVIEW

Our review is de novo upon the record of the trial court without any presumption of correctness attaching to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996) and Tenn. R. App. P. 13(d).  We must, however, presume

the trial court's factual findings to be correct absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

A trial court's use of its contempt power is within its sound discretion and will be reviewed by an appellate court under an abuse of discretion standard. *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision against logic or reasoning that causes an injustice to the party complaining. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

## IV. DISCUSSION

Willful disobedience to a court's order is contempt. *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). As noted in *Jones v. Jones*, No. 01A01-9607-CV-00346, 1997 WL 80029 (Tenn. Ct. App. M.S., Feb. 26, 1997),

> [t]he threshold issue in every appeal from a finding of contempt is whether the contempt is civil or criminal. The answer turns on the conduct involved and the sanctions imposed, not on the labels of "civil" or "criminal" affixed by the parties or the trial court."

> * * *

> The purpose of a civil contempt proceeding is to coerce the contemnor to comply with a court's order. It is a remedial proceeding, and is intended to benefit the party seeking the contempt order. Civil contempt sanctions are open-ended and terminate when the contemnor complies with the court's order. In this sense, the contemnor "carries the keys to the jail in his or her own pocket."

> On the other hand, the purpose of a criminal contempt proceeding is to vindicate the authority of the law and the court. It is a punitive proceeding intended to impose a fixed punishment for past actions. Punishment for criminal contempt is not conditional and must be served even if the contemnor later complies with the court's order.

*Jones*, 1997 WL 80029, at *2 (internal citations omitted). As further noted in *Jones*,

> [c]riminal contempt is either direct or indirect. Disruptive or disobedient acts

committed in the court's presence constitute direct criminal contempt. Trial courts may impose summary punishment for these acts when there is a need to act swiftly and firmly to prevent contumacious conduct from disrupting a judicial proceeding. Contemptuous acts committed outside of the court's presence constitute indirect criminal contempt. Trial courts may impose punishment for indirect criminal contempt only after providing notice pursuant to Tenn. R. Crim. P. 42(b). Like all persons charged with contempt, persons facing an indirect criminal contempt charge are entitled to the presumption of innocence, the privilege against self-incrimination, and the requirement that their guilt be proven beyond a reasonable doubt.

*Jones*, 1997 WL 80029, at *3 (internal citations omitted). A ten-day sentence is the maximum period of incarceration allowed for criminal contempt pursuant to Tenn. Code Ann. § 29-9-103(b) (2000).

A.

Mother initially contends the trial court committed reversible error by refusing to set her bail in contravention of the constitutional guarantees afforded to her. Tenn. R. Crim. P. 42(b) provides that the defendant in a criminal contempt case is "entitled to admission to bail as provided by these rules." Tenn. R. Crim. P. 32(d)(1) provides that "a person convicted of a misdemeanor has a right to have bail set or to be released on recognizance pending the exhaustion of all direct appellate procedure in the case."

In *Weissfeld v. Weissfeld*, No. E2004-00134-COA-R3-CV, 2004 WL 2070979 (Tenn. Ct. App. E.S., Sept. 16, 2004), we determined "that the cited rules mandate that there be a timely setting of bail upon a criminal contempt conviction and the trial court's failure to do so in this case constituted further procedural error." 2004 WL 2070979, at *5.

Upon the findings of criminal contempt at the conclusion of the hearing on December 15, 2008, the trial court denied an appeal bond. Counsel for Mother requested that bail be set in order to appeal the finding. Mother contends that the Rules of Criminal Procedure have been violated by the trial court upon denying bail after the finding of criminal contempt.

This court set bail for Mother on December 23, 2008. Pursuant to Tenn. R. Crim. P. 42(b)(3), we found Mother's "Emergency Motion to Set Appeal Bond" to be well taken. It was ordered that upon Mother furnishing bail in the amount of $5,000 in a satisfactory form, she was to be immediately released on bail pending final determination of her appeal. In view of our action, we find this issue to be moot. A matter will be considered moot if it no

-6-

longer serves as a means to provide some sort of relief to the party who may prevail or if it no longer presents a present, ongoing controversy. *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945); *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996).

B.

Trial courts may impose punishment for indirect criminal contempt only after providing notice pursuant to Tenn. R. Crim. P. 42(b), which provides in pertinent part:

(1) Content of Notice. The criminal contempt notice shall:

(A) state the time and place of the hearing;

(B) allow the defendant a reasonable time to prepare a defense; and

(C) state the essential facts constituting the criminal contempt charged and describe it as such.

(2) Form of Notice. The judge shall give the notice orally in open court in the presence of the defendant or, on application of the district attorney general or of an attorney appointed by the court for that purpose, by a show cause or arrest order.

Tenn. R. Crim. P. 42(b)(1)-(2).

Sufficient notice meeting the requirements of due process must be given as a prerequisite to a court's authority to punish a party for criminal contempt committed outside the presence of the court. *Storey v. Storey*, 835 S.W.2d 593, 599-600 (Tenn. Ct. App. 1992). Under Tenn. R. Crim. P. 42(b), a person facing a criminal contempt charge must "be given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge." *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006) (citation omitted). "Essential facts are those which, at a minimum, (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment – not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous." *Id.* at 13-14.

-7-

Mother argues that in examining the petition for contempt and show cause order for purportedly violating the parenting plan, as well as reviewing the October 8 and December 12 hearings, the notice required under Tenn. R. Crim. P. 42(b) is deficient. She contends that the petition for contempt and show cause order fails to state the essential facts constituting the criminal contempt charge as required under Tenn. R. Crim. P. 42(b)(1)(C). According to her, while this petition requests Mother be punished for her failure to follow the temporary parenting plan, nowhere does the petition state that Mother allegedly violated the parenting plan 105 times and thus faced jail time up to 1070 days.

Mother further contends that the trial court erred in finding her in criminal contempt without giving her notice orally in open court as required by Tenn. R. Crim. P. 42(b)(2). She asserts that her sentence must be overturned because the trial court did not give her notice orally in open court that she faced the potential sentence of 1070 days of incarceration.

During the hearing on October 8, it appears the trial court was initially under the impression that Father's attorney had brought a contempt petition based on Mother's lack of adherence to the parenting plan. As the hearing progressed, counsel for Father filed and served only the petition for criminal contempt based on Mother allegedly contacting the children via text message. The trial court then requested in open court that Father's attorney file a petition for contempt based on the withholding of co-parenting time.

Mother asserts that at no point in time did the trial court give her notice orally in open court that she faced jail time for withholding co-parenting time. According to Mother, the only arguably oral notice was the request from the trial court to Father's attorney to file a petition for contempt based on the withholding of co-parenting time.

Penalties for criminal contempt cannot be imposed on someone who has not been afforded the protections that the state and federal constitutions require in criminal proceedings. *See Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1429-30 (1988). The court in which a petition for criminal contempt is filed must assure that the accused party receives adequate notice of the charges he or she faces. *McPherson v. McPherson*, No. M2003-02677-COA-R3-CV, 2005 WL 3479630, at *5 (Tenn. Ct. App. M.S., Dec. 19, 2005); Tenn. R. Crim. P. 42(b). Upon our review of this record, we find that it raises serious doubts concerning whether Mother clearly understood that the petitions exposed her to incarceration. Further, we find that the trial court failed to provide Mother with proper oral notice about the charges as required by Tenn. R. Crim. P. 42(b). Accordingly, we vacate Mother's punishment for criminal contempt.[2]

---

[2]Mother's additional contentions will not be addressed in view of our ruling.

## V. CONCLUSION

The trial court's order finding Mother to be in criminal contempt is vacated and this case is remanded to the Circuit Court of Knox County for collection of costs below. Costs on appeal are taxed to the Appellee, Jason Eric McLean, for which execution may issue, if necessary.

_____
JOHN W. McCLARTY, JUDGE