# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
May 7, 2013 Session

## STATE OF TENNESSEE EX REL. TONYA DOTSON v. DONALD HOWARD

### Appeal from the Juvenile Court for Williamson County
### No. 66866 29205    Joshua L. Rogers, Child Support Magistrate

---

### No. M2012-02248-COA-R3-JV - Filed May 28, 2013

---

The father of one child appeals the trial court's finding of ten counts of criminal contempt for failing to pay ten weekly child support payments and the imposition of consecutive sentences of ten days for each count for a total sentence of 100 days in jail. Petitioner introduced little evidence other than proof that the father had not paid child support; the father defended the petition insisting he did not have the ability to pay support. Medical records introduced into evidence, along with the testimony of the father and his optometrist, established that the father suffered from an autoimmune medical condition that substantially impairs his vision and prevents him from working in bright light, including sunlight, and from working in a hot environment. Additionally, the father has a tenth grade education and is a convicted felon, facts which further impair his employability. Considering the evidence in the light most favorable to the prosecution, we are unable to conclude that a trier of fact could have found beyond a reasonable doubt that the father had the ability to pay and that his failure to pay support was willful. Accordingly, his conviction of ten counts of contempt for willfully failing to pay child support is reversed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed

Frank G. Clement, Jr., J., delivered the opinion of the Court, in which Patricia J. Cottrell, P.J., M.S., and Andy D. Bennett, J., joined.

Paul A. Justice, III, Franklin, Tennessee, for the appellant, Donald Howard.

Robert E. Cooper, Jr., Attorney General and Reporter, Warren A. Jasper, Lead Counsel, and Jennifer L. Cole, Nashville, Tennessee, for the appellee, State of Tennessee ex rel. Tonya Dotson.

# OPINION

On December 15, 2008, the State of Tennessee ex rel Tonya Dotson filed a petition against Donald Howard to set his child support obligation for the parties' one child. On January 29, 2009, a judgment was entered for retroactive child support and setting his support obligation at $60.92 per week, which included $6.00 to be applied to the arrearage judgment. By an order entered on August 27, 2010, Mr. Howard's child support obligation was increased to $95.23 per week, which included $5.00 to be applied to the arrearage judgment of $7,338.23.

In 2011, the first petition to hold Mr. Howard in contempt for failing to pay child support was filed. Following a hearing on July 8, 2011, Mr. Howard was found in criminal contempt for ten violations of the child support order and sentenced to 100 days in jail, of which 98 days were suspended. Thereafter, Mr. Howard once again fell behind on his support obligations and the suspended sentence was placed into effect on September 30, 2011. After serving the remaining 98 days of the sentence, Mr. Howard was released in January 2012.

The petition at issue in this appeal was filed on March 26, 2012, two months after Mr. Howard was released from jail. The petition alleged that Mr. Howard was in arrears of $14,506.63 as of February 15, 2012. The petition did not specify the pre-petition weeks for which Mr. Howard failed to make payments. The Petition also stated that "Petitioner is seeking contempt for any and all missed child support payments from the date of filing of this petition until the date of the hearing." Due to his indigency, Mr. Howard was appointed counsel.

A hearing occurred on September 28, 2012. Three witnesses testified: Mr. Howard, Dr. John Kirby, Mr. Howard's optometrist, and Tonya Dotson, the mother of the child. Dr. Kirby testified that Mr. Howard suffers from sarcoidosis, an autoimmune medical condition that, *inter alia*, substantially impairs his vision.[1] He also stated that due to sarcoidosis Mr. Howard cannot tolerate sunlight or bright lights without protective glasses and he cannot tolerate a hot environment due to its effect on his skin. Dr. Kirby testified that Mr. Howard is able to work with several restrictions and the appropriate environmental conditions. Additionally, two letters from other doctors who have treated Mr. Howard were introduced without objection. In one letter, dated August 2011, the doctor advised that Mr. Howard was unable to work due to severe glare and visual impairment caused by his condition; in another letter dated December 2011, the doctor advised against any "strenuous" lifting or work while he was being treated for his condition.

---

[1]Sarcoidosis is a chronic inflammatory disease, characterized by lesions on the skin, lymph nodes, lung, salivary glands and other areas. 3-23 *Lawyers' Medical Cyclopedia* § 23.13 (Matthew Bender 2013).

Mr. Howard testified that he had been out of jail for only two months when this petition was filed and he had not been able to find employment. He also stated his employment options are very limited, due to his medical condition, because he cannot read regular size font, he cannot tolerate bright sunlight or bright lights, he cannot tolerate a hot environment due to its effect on his skin, and he cannot engage in strenuous or stressful activities. Mr. Howard also testified that he was diagnosed with Post Traumatic Stress Disorder following an incident in which he was shot several times outside of his home. He stated he has a tenth grade education and is a convicted felon, both of which circumstances additionally limits his employment options. Mr. Howard testified that when he got out of jail in January 2012 his only income was an SSI disability benefit of $328 a month, and that he gave the January SSI check to Ms. Dotson as payment toward his child support obligation.[2] Mr. Howard testified that he had applied for around ten jobs since May 2012, however, he had been unsuccessful in gaining employment.

Ms. Dotson, the mother of the parties' child, briefly testified. She acknowledged receiving the $328 SSI check from Mr. Howard in January, but stated she has received no other support since he was released from jail in January 2012. She also testified that Mr. Howard told her about a year to a year and a half prior to the hearing that he did not want to work and never wanted to work.

Following the hearing, the juvenile court magistrate entered an order finding ten violations of criminal contempt for failure to pay child support based upon its finding that Mr. Howard was not credible due to his inconsistent testimony. The court further found that Mr. Howard could work certain jobs. The trial court did not specify dates for the violations. The court sentenced Mr. Howard to ten days for each violation with a total sentence of 100 days. Mr. Howard was immediately jailed, where he remained for a few days until an appeal bond was posted, after which he was released pending this appeal.

In this appeal, Mr. Howard asserts that the evidence is insufficient to prove beyond a reasonable doubt that he had the ability to pay child support and that he willfully refused his support obligations.[3]

---

[2]By the time of trial in September 2012, Mr. Howard's SSI disability benefit had increased to $628 a month.

[3]He also asserts: (1) that his due process rights were violated because the petition provided inadequate notice of the charges, and (2) that the trial court erred by not allowing sentencing arguments, and in imposing excessive sentencing. Our ruling renders these issues moot.

**ANALYSIS**

## I. CRIMINAL CONTEMPT

The purpose of criminal contempt is to "preserve the power and vindicate the dignity and authority of the law" as well as to preserve the court "as an organ of society." *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996); *see also Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). Criminal contempt proceedings "in a very true sense raise an issue between the public and the accused." *Id.* Unlike civil contempt, criminal contempt is not to be used to benefit the contemnor's adversary in a civil proceeding; that is the purpose and function of civil contempt. *Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 510 (Tenn. 2005) (stating that a civil contempt action is generally brought to enforce private rights). "Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of rights." *Doe v. Bd. of Prof'l Responsibility of Supreme Court of Tenn.,* 104 S.W.3d 465, 473-474 (Tenn. 2003).

"Unless the contemptuous act was committed in the presence of the court, proceedings for criminal contempt must comply with Tenn. R. Crim. P. 42(b)." [4] *Long v. McAllister-Long,* 221 S.W.3d 1, 12 (Tenn. Ct. App. 2006). Rule 42(b) reads:

(b) Disposition on Notice and Hearing. A criminal contempt shall be prosecuted on notice, except as provided in subdivision (a) of this rule.

(1) Content of Notice. The criminal contempt notice shall:

(A) state the time and place of the hearing;
(B) allow the defendant a reasonable time to prepare a defense; and
(C) state the essential facts constituting the criminal contempt charged and describe it as such.

(2) Form of Notice. The judge shall give the notice orally in open court in the presence of the defendant or, on application of

---

[4]"Criminal contempt is either direct or indirect. Disruptive or disobedient acts committed in the court's presence constitute direct criminal contempt." *Long v. McAllister-Long,* 221 S.W.3d 1, 12 n.11 (Tenn. Ct. App. 2006) (citing Tenn. Code Ann. § 29–9–102(1) (2000); *Black v. Blount*, 938 S.W.2d at 398; *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978)). "Contemptuous acts committed outside the court's presence constitute indirect criminal contempt." *Id* (citing *State v. Maddux*, 571 S.W.2d at 821).

the district attorney general or of an attorney appointed by the
court for that purpose, by a show cause or arrest order.

Tenn. R. Crim. P. 42(b)**.**

Tennessee Rule of Criminal Procedure 42(b) mandates that a party facing a criminal
contempt charge be given "explicit notice that they are charged with criminal contempt and
must also be informed of the facts giving rise to the charge."[5] *Long*, 221 S.W.3d at 12.
Although the party seeking to hold another in indirect criminal contempt should draft the
petition as 42(b) requires, it is the duty of the court in which a petition for indirect criminal
contempt is filed to assure that the accused receives adequate notice of the charges. *Id.* at 13
(citing *McPherson v. McPherson*, No. M2003–02677–COA–R3–CV, 2005 WL 3479630 at
*5 (Tenn. Ct. App. Dec.19, 2005); Tenn. R. Crim. P. 42(b)).

## II.  WILLFUL FAILURE TO PAY CHILD SUPPORT

The contemptuous offense of willfully failing to pay child support has two essential
but distinct elements: (1) the defendant had "the ability to pay at the time the support was
due," and (2) "the failure to pay was willful." *Cottingham v. Cottingam*, 193 S.W.3d 531,
539 (Tenn. 2006). Whether the alleged contemnor had the "ability to pay" and whether the
failure to pay was "willful" require distinct findings of fact, and both must be proven beyond
a reasonable doubt in order to find a person in criminal contempt. *Id.*

## III.  THE EVIDENCE IN THIS CASE

The person accused of criminal contempt is presumed to be innocent and the
prosecution bears the burden of proving guilt beyond a reasonable doubt. *Simpkins v.
Simpkins*, 374 S.W.3d 413, 420 (Tenn. Ct. App. 2012) (citing *Cottingham*, 193 S.W.3d at
538)). Once convicted of criminal contempt, the defendant loses the presumption of
innocence. Thus, on appeal, the issue is whether, considering the evidence in the light most
favorable to the prosecution, any trier of fact could have found the essential elements of the
crime beyond a reasonable doubt. *Long*, 221 S.W.3d at 12-14 (citing Tenn. R. App. P. 13(e)).

The petition at issue in this appeal was filed on March 26, 2012, a mere two months
after Mr. Howard was released from jail where he had been detained for 98 consecutive

---

[5]Notice of a charge of indirect criminal contempt may specify multiple violations so long as they are
sufficiently distinct to support separate convictions. *State v. Wood*, 2002, 91 S.W.3d 769, 775 (Tenn. 2002)
(citing Tenn. R. Crim. Proc. Rule 42(b)).

days.[6] The petition provided very few facts or details other than the assertion that Mr. Howard had failed to pay child support and that Mr. Howard was in arrears of $14,506.63 as of February 15, 2012. The petition did not specify the pre-petition weeks for which Mr. Howard failed to make payments but attached to the petition, and incorporated therein by reference, was a summary of payments made through the Child Support Enforcement Services office that identified the weeks and amounts Mr. Howard had paid support prior to February 15, 2012. However, the attached sheet did not give Mr. Howard credit for his $328 SSI check that he gave Ms. Dotson in January 2012, which would have been sufficient to pay a minimum of three weeks of his current support obligation.

To further confuse matters, in opening statements at the September 28, 2012 trial, the prosecutor asked for eighteen counts of contempt but did not specify which eighteen weeks. Then, the trial court found Mr. Howard guilty of ten counts but did not specify which ten weeks – from January to September 28, 2012 – Mr. Howard had the ability to pay and willfully failed to pay support. Thus, this court is left in the undesirable position of attempting to determine whether the evidence established, beyond a reasonable doubt, that Mr. Howard had the ability to pay and willfully failed to pay ten specific support payments during ten unspecified weeks over a period of approximately thirty-six weeks. Nevertheless, the petitioner contends the evidence is sufficient to affirm the convictions due to the trial court's finding that Mr. Howard had the ability to work at all times, and Ms. Dotson's testimony that Mr. Howard simply did not want to work.

As for Ms. Dotson's testimony that Mr. Howard did not want to work, her testimony pertained to a statement made by Mr. Howard sometime in 2011, a period of time far removed from the time the support was due in this proceeding. As we noted in *State ex rel. Martin v. Lynch*, No. M2009-00994-COA-R3-JV, 2010 WL 3064365, *3 (Tenn. Ct. App. Aug. 5, 2010):

> The appropriate inquiry in this case is whether Mother had the ability to make the payments "at the time the support was due," from December 7, 2005 through March 4, 2008. The trial court found Mother's attitude was lackadaisical during the time her case was assigned to the problem solving program. This time frame, however, is not germane to the issue of whether Mother had the ability to pay support when the payments [at issue in this contempt proceeding] were due. We, therefore, find the trial court erroneously considered Mother's conduct during a period of time that was not germane to the matter at issue.

---

[6]Mr. Howard had already served two days of the 100 day sentence, of which 98 days had been suspended. Thereafter, Mr. Howard served the balance of the 100 sentence and was released in January 2012.

Ms. Dotson's testimony that Mr. Howard did not want to work in a prior year, a time period not germane to that at issue, could be relevant if the petitioner connects the dots but we cannot find the dots to connect Mr. Howard's statement in 2011 to the period presently under review, January through September 2012. Moreover, Mr. Howard testified that he had applied for ten jobs since May 2012, but he was unsuccessful in gaining employment, and this testimony was not contradicted.

As for Mr. Howard having the ability to work between January and September 2012, the evidence is uncontradicted that he suffers from sarcoidosis, an autoimmune medical condition that substantially impairs his vision, that Mr. Howard cannot see well enough to read, and that due to his sarcoidosis, he cannot tolerate sunlight without protective glasses and he cannot tolerate a hot environment due to its effect on his skin. As Dr. Kirby explained, Mr. Howard may be able to work at some jobs but with several restrictions and the appropriate environmental conditions. Dr. Kirby also explained that Mr. Howard was working toward vocational rehabilitation and that he had ordered a portable device for Mr. Howard to use that would make text legible for Mr. Howard to read but the device had not yet been approved. Additional limitations of Mr. Howard's employability is that he has a tenth grade education and has been convicted of multiple felonies, both of which limit his job opportunities.

The issue before us is whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Long*, 221 S.W.3d at 12-14 (citing Tenn. R. App. P. 13(e)). Considering the evidence in this record pursuant to the foregoing standard, we are unable to conclude beyond a reasonable doubt, that Mr. Howard had the ability to pay the support as ordered or that he willfully failed to pay such support during the period from January 2012 to September 18, 2012.[7]

---

[7]Although our decision renders an analysis of the trial court's decision to impose the maximum sentence for each count and to make each sentence run consecutively, it is important to note that not every contemptuous act, or combination of contemptuous acts, justifies the imposition of a maximum sentence, particularly when consecutive sentencing is in play. *Simpkins*, 374 S.W.3d at 422 (citing *In re Sneed,* 302 S.W.3d 825, 828 (Tenn. 2010)). The overall length of a contemnor's sentence must be "justly deserved in relation to the seriousness of the offense[s]," and "no greater than that deserved" under the circumstances." *In re Sneed,* 302 S.W.3d at 828. Once a court determines that multiple convictions for contempt are appropriate, the court must determine the manner in which the multiple sentences are to be served, meaning "whether the sentences run consecutively or concurrently to one another." *Id.* (citing Tenn. Code Ann. § 40–35–115(a)). In certain cases, "partial consecutive sentencing" and concurrent sentencing may be appropriate. *Id.* at 829 (citing *State v. Cummings*, 868 S.W.2d 661, 664, 667 (Tenn. Crim. App. 1992)).

## IN CONCLUSION

The judgment of the trial court is vacated and this matter is remanded with instructions to dismiss the petition for contempt. Costs of appeal are assessed against Appellee, the State of Tennessee.

_____
FRANK G. CLEMENT, JR., JUDGE