IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 25, 2013 Session

## PATRICIA GAY PATTERSON LATTIMORE v. JAMES S. LATTIMORE, JR.

**Direct Appeal from the Circuit Court for Williamson County**
**No. 93699      Derek K. Smith, Judge**

---

**No. M2012-02674-COA-R3-CV - Filed October 24, 2013**

---

Wife filed a petition to hold husband in criminal contempt for breaching provisions of their marital dissolution agreement that required husband to pay alimony, provide medical insurance, and maintain life insurance policies. Following a bench trial, husband was found guilty of criminal contempt for seventy separate violations of the agreement. The trial court awarded wife $157,850.00 for alimony arrearages, $8,075.25 to reimburse medical insurance expenses, and $11,801.19 for attorney's fees. The trial court also sentenced husband to thirty days of incarceration, but stayed the sentence for ninety days pending husband's compliance with the judgment. After reviewing the record, we affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Reversed in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Angela R. Hoover and Justin Lee Crouch, Franklin, Tennessee, for the appellant, James S. Lattimore, Jr.,

David William Garrett, Franklin, Tennessee, for the appellee, Patricia Gay Patterson Lattimore.

### OPINION

#### I. BACKGROUND AND PROCEDURAL HISTORY

Patricia Gay Patterson Lattimore ("Wife") and James S. Lattimore, Jr. ("Husband")

were divorced by final judgment on September 6, 1994. The final decree of divorce approved and incorporated a marital dissolution agreement ("MDA") entered and signed by the parties. Among other things, the MDA required Husband to do the following until Wife's death or remarriage: (1) pay to Wife alimony in futuro of $4,000[1] per month, due at the first of each month, (2) continue to provide medical insurance for Wife, and (3) maintain all existing life insurance policies on his life with Wife named as sole beneficiary thereon.

On June 5, 2009, Wife filed a petition in the Circuit Court for Williamson County seeking to hold Husband in criminal contempt for willful failure to comply with the MDA. Wife alleged that as of the date of the filing, Husband owed an alimony arrearage of $4,000 for a missed monthly payment in May 2009. Additionally, Wife alleged that Husband had never provided medical insurance nor provided documentation of life insurance as required by the MDA. Wife requested that the court (1) hold Husband in willful criminal contempt for failure to comply with the MDA, (2) award Wife $4,000 for alimony in arrearages, plus any further arrearages that would accumulate during litigation, (3) award Wife reimbursement for all monies she spent on medical insurance, (4) order Husband to provide proof of requisite life insurance, and (5) award Wife reasonable attorney's fees and costs.

Husband responded by denying that he willfully failed to comply with the MDA. Husband claimed that he was unable to work as a result of his declining health and that his retirement accounts had been depleted to meet his alimony obligations through April 2009. Husband further claimed that he had provided medical insurance for Wife through his employer until he was forced to retire and was not obligated to maintain any life insurance policies under the MDA because none existed at the time of divorce. Husband asked that the trial court not hold him in criminal contempt of court and deny Wife's requests for judgment.

At trial, Wife presented evidence that indicated Husband was able to pay his support obligations. In 2004, Husband offered Wife a $250,000 lump sum payment to settle the remainder of his alimony obligation. When Wife declined the offer, Husband warned her that unless some other agreement was reached, he would run out of money in September 2009. Subsequently, in a letter dated January 2006, Husband warned Wife that if she would not accept his offer, he would transfer the remainder of his assets to his current spouse, Joan Lattimore ("Joan"). The trial court found that Husband did just that.

In 1993, Husband purchased a rundown piece of property out of foreclosure. He restored the property and sold it in 2003 for $2,350,000. Husband made a profit of over

---

[1]The MDA required Husband to make alimony payments of $3,500 per month until June 1996, at which time the amount increased to $4,000 per month. Payments prior to June 1996 are not relevant in this matter.

$1,600,000 from the sale, which Husband readily admitted he transferred to Joan. At trial, Husband gave conflicting accounts of what he did with the profits. First, Husband claimed he gave the profits to Joan because he felt morally obligated to honor an agreement the two made prior to their marriage. Husband purportedly told Joan that if she would refurbish the property, he would give her any profits from its eventual sale. However, on cross-examination Husband admitted that the profits were initially put into a investment account jointly owned by Husband and Joan. In any event, the profits from the sale were used to build the $1,296,100[2] home that Husband and Joan live in currently. Regarding ownership of the couple's current home, Husband again gave conflicting testimony. Husband initially claimed that the couple's current home belonged solely to Joan, and that he was privileged to live there. However, on cross-examination Husband admitted the land for the home was originally titled to Husband and Joan jointly. Husband initially testified he was listed on the title to the land by mistake, but he later admitted it was done for tax purposes.

Based on the inconsistencies of his testimony, the trial court found that Husband was not a credible witness. The trial court found that at the time of the couple's divorce, Husband maintained a life insurance policy naming Wife the sole beneficiary. Husband gave up the policy in 2000. The trial court also found that Husband failed to provide Wife medical insurance since his retirement and that since that time, Wife had paid for her own medical insurance for thirty-six months. Finally, the trial court found that Husband had willfully failed to make alimony payments for thirty-three months. Based on all of the evidence presented, the trial court determined beyond a reasonable doubt that Husband had the ability to meet each of his obligations under the MDA and willfully declined to do so.

The trial court convicted Husband of thirty-three counts of criminal contempt for failure to pay alimony,[3] thirty-six counts for failure to provide medical insurance,[4] and one count for failure to maintain life insurance. Additionally, the trial court awarded Wife a judgment against Husband of $157,850.00 for alimony arrearage, $8,075.25 to reimburse Wife's medical insurance payments, and $11,801.19 for her reasonable attorney's fees. Though he was found guilty on seventy counts of criminal contempt, the trial court only sentenced Husband based on three counts–one for each violated provision of MDA. Husband was sentenced to ten days incarceration for each of the three counts, but the trial court stayed the thirty day sentence for ninety days to give Husband an opportunity to pay the aforementioned judgment. The court ordered that if Husband paid the judgment in full

_____

[2]Appraisal value in 2012.

[3]One count for each missed monthly alimony payment.

[4]One count for each month Wife paid for her own insurance.

within ninety days of sentencing, the thirty day sentence would be suspended. After the court denied Husband's motion for a new trial, he timely filed a notice of appeal with this Court.

## II. ISSUES PRESENTED

On appeal Husband raises the following issues, as restated, for our review:

1.   Whether the trial court erred by failing to provide Husband proper notice of the charges against him.

2.   Whether the trial court erred by ordering a ninety day stay on Husband's sentence.

3.   Whether the trial court erred by finding that Husband's failure to comply with the MDA was willful and that Husband had the ability to comply.

4.   Whether the trial court erred by awarding attorney's fees to Wife.

## III. STANDARD OF REVIEW

Our review of the record is *de novo* upon the record without any presumption of correctness attaching to the trial court's conclusions of law. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002). We do, however, presume the trial court's factual findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995).

In criminal contempt cases, guilt must be established by proof beyond a reasonable doubt. *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). We review the trial court's decision of whether to impose criminal contempt sanctions under an abuse of discretion standard and we will only reverse its criminal contempt convictions "when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Moody v. Hutchison*, 159 S.W.3d 15, 25 (Tenn. Ct. App. 2004) (quoting *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993)).

## IV. DISCUSSION

### A. Notice of the Charges

First, Husband contends that Wife's contempt petition did not provide adequate notice

of the charges against him. Wife's petition requests that the court hold Husband in criminal contempt for "each act of criminal contempt," and specifies three provisions of the MDA that Husband allegedly violated: (1) Husband's obligation to make monthly alimony payments, (2) Husband's obligation to provide medical insurance for Wife, and (3) Husband's obligation to maintain life insurance policies naming Wife as sole beneficiary. Husband argues that, at most, Wife's petition put him on notice that he could be convicted of three counts of criminal contempt. Husband contends that he was never aware that he could be convicted of seventy counts of criminal contempt and therefore all of the trial court's convictions should be overturned. We agree that Husband was only properly notified of three counts of criminal contempt. We therefore uphold those three convictions, while reversing the other sixty-seven.

Criminal contempt is either direct or indirect. Disruptive or disobedient actions that take place in the presence of the court constitute direct criminal contempt. *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978). Trial courts may impose immediate punishment for direct contemptuous acts to prevent further disruption of judicial proceedings. *State v. Turner*, 914 S.W.2d 951, 956 (Tenn. Crim. App. 1995). Indirect criminal contempt arises from contemptuous acts committed outside of the court's presence. *Maddux*, 571 S.W.2d at 821. Trial courts may impose punishment for indirect criminal contempt only after assuring the accused party receives notice pursuant to Tennessee Rule of Criminal Procedure section 42(b). *Long v. McAllister-Long*, 221 S.W.3d 1, 14 (Tenn. Ct. App. 2006). In pertinent part, Tennessee Rule of Criminal Procedure section 42(b) provides that "[t]he criminal contempt notice shall: (A) state the time and place of the hearing; (B) allow the defendant a reasonable time to prepare a defense; and (C) state the essential facts constituting the criminal contempt charged and describe it as such." Tenn. R. Crim. P. 42(b) (2012).

In order to provide adequate notice, parties seeking to hold another in indirect criminal contempt should draft their petitions to comply with Tenn. R. Crim. P. 42(b)'s notice requirements. *Long*, 221 S.W.3d at 13. It is important that the petition provide adequate notice of the charges because "[p]roviding this notice at an early stage better enables the accused to invoke his or her procedural rights." *State v. Thornton*, No. M2011-02444-CCA-R3-CD, 2013 WL 322202 at *5 (Tenn. Crim. App. Jan. 29, 2013) (citing *United States v. United Mineworkers*, 330 U.S. 258, 374 (1947) (Rutledge, J., dissenting) (stating that "[o]ne who does not know until the end of litigation what his procedural rights in trial are, or may have been, has no such rights"). In *Long v. McAllister-Long*, we defined the notice necessary to meet the requirements of Tenn. R. Crim. P. 42(b) as follows:

> Adequate notice is notice that is clear and unambiguous to the average citizen. Because the same conduct can constitute both civil contempt and criminal contempt and because both contempt proceedings may carry with them the

possibility of incarceration, it is imperative that notice specifically charge a party with criminal contempt. Adequate notice encompasses, but is not limited to, the mandates of Tenn. R.Crim. P. 42(b), which require that notice state the time and place of the hearing, allow the defendant reasonable time to prepare a defense, and state succinctly for the accused the "essential facts" constituting the charge. Essential facts are those which, at a minimum, (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment—not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous.

*Long*, 221 S.W.3d at 13-14 (internal citations omitted).

Wife's petition unambiguously requests that Husband be held in criminal contempt. Her petition alleges that Husband willfully violated the terms of the parties' MDA by failing to pay alimony for May 2009, failing to provide medical insurance, and failing to provide proof of requisite life insurance. It goes on to request that the court find Husband in willful criminal contempt for "each act of criminal contempt." However, the petition does not define what actions or inactions constitute "each act of criminal contempt." Wife argues that because Husband was the one responsible for the alimony payments, he knew how many he had missed. Though we agree with that statement, the petition does not indicate that each missed alimony payment and each month Wife paid for her own medical insurance should constitute a separate count of criminal contempt. Based on the language of Wife's petition, we cannot say that it put Husband on notice that he could potentially be convicted of seventy counts of criminal contempt. Rather, the petition's plain language indicates that Husband may be convicted of only three counts of criminal contempt. Therefore, all convictions based on conduct not charged, here sixty-seven counts, are reversed.

As noted, proper notice was given for three counts of criminal contempt–one for failure to pay alimony, one for failure to provide medical insurance, and one for failure to provide proof of requisite life insurance. The trial court sentenced Husband to ten days of incarceration for each of those convictions and stayed the sentence for ninety days pending Husband's compliance with the judgment. Those three convictions and their resulting sentences are not affected by the ruling in this section.

### B. 90-Day Stay on Sentence

Husband also contends that the trial court erred by staying his prison sentence for

ninety days to coerce his compliance with the judgment. Husband argues that coercive remedies are appropriate only in civil contempt proceedings and should not be applied in criminal contempt cases. Husband argues that because the trial court improperly ordered a coercive, civil remedy based on a petition for criminal contempt, his conviction should be reversed. We disagree.

Husband's argument focuses on the policies underlying civil and criminal contempt proceedings. Civil contempt proceedings are designed to coerce compliance with an order, thereby securing the private rights established by the order. *Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 510 (Tenn. 2005). When a court orders imprisonment for civil contempt, compliance with the order will result in the charged party's immediate release. *Id.* at 511. It is often said that a party convicted of civil contempt, "carries the keys to his prison in his own pocket." *State ex rel. Anderson v. Daugherty*, 191 S.W. 974, 974 (Tenn. 1917). Conversely, criminal contempt is designed to "preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society." *State v. Beeler*, 387 S.W.3d 511, 520 (Tenn. 2012) (quoting *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996)). Sanctions for criminal contempt are designed to punish past behavior rather than coerce compliance or influence future behavior. *See id.* at 520. Therefore, when a court orders imprisonment for criminal contempt, compliance with the order will not normally shorten the term of incarceration–"the defendant is furnished no key." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911).

Despite the underlying policy differences between civil and criminal contempt, in similar criminal contempt cases we have held that reserving punishment pending a party's compliance with the court order is "tantamount to the imposition of a suspended sentence." *Sprague v. Sprague*, No. E2012-01133-COA-R3-CV, 2013 WL 3148278, at *5 (Tenn. Ct. App. June 18, 2013). In fact, we recognize that "[i]t is not unusual for a court that has found an individual in criminal contempt for violating its order to suspend a sentence imposed as a sanction for that contempt." *Coffey v. Coffey*, No. 2012-00143-COA-R3-CV, 2013 WL 1279410, at *8 (Tenn. Ct. App. Mar. 28, 2013) (citing *Cansler v. Cansler*, No. E2008-01125-COA-R3-CV, 2010 WL 342652, at *10 (Tenn. Ct. App. Feb. 1, 2010)); *see also Wilkinson v. Wilkinson*, No. M2010-00026-COA-R3-CV, 2011 WL 5986405, at *2 (Tenn. Ct. App. Nov. 29, 2011)*; Sloan v. Poff*, No. M2009-01839-COA-R3-JV, 2011 WL 1166845, at *10 (Tenn. Ct. App. Mar. 29, 2011). In light of the foregoing, we find the trial court did not err by staying Husband's sentence for ninety days to give him the opportunity to avoid incarceration.

### C. Sufficiency of the Evidence

Husband further contends that the evidence submitted at trial does not support the trial

court's conclusion that he willfully disobeyed the provisions of the MDA. Once a defendant has been convicted of criminal contempt, he loses the presumption of innocence he had at trial. *Simpkins v. Simpkins*, 374 S.W.3d 413, 420 (Tenn. Ct. App. 2012). Our standard of review on appeal is whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. Ct. App. 2006) (citing Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996)). We afford the prosecution the strongest legitimate view of the evidence in the record and all legitimate inferences that may be drawn therefrom. *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003). Questions regarding witness credibility, the weight to be given to the evidence, and any factual issues raised by the evidence are resolved by the trier of fact. *Id.* Husband contends that even if the evidence is viewed in a light most favorable to the prosecution, it is insufficient to support the criminal contempt convictions.

The trial court found Husband guilty of criminal contempt under Tennessee Code Annotated section 29-9-102(3), which requires "*willful* disobedience" with a court order. Tenn. Code Ann. § 29-9-102(3) (2012) (emphasis added). The trial court relied on evidence of Husband's extravagant lifestyle to reach the conclusion that he had the financial ability to comply with the MDA. Husband argues that although his lifestyle appears to indicate that he is financially stable, he is actually supported by his current spouse, Joan, and her financial success. He contends that his failure to comply with the MDA was not willful and he therefore cannot be convicted of criminal contempt under the statute. We disagree. We think that the evidence in the record is more than sufficient to find that Husband had the ability to pay his financial obligations under the MDA.

The trial court affirmatively found beyond a reasonable doubt that Husband purposefully transferred major assets to Joan in an attempt to avoid his financial obligations under the MDA. At trial, Husband readily admitted that he transferred over $1,600,000 in profits from the 2003 sale of refurbished property to Joan. That money was used to purchase the couple's current home, which has been valued at $1,296,100. Husband also admitted to setting up a shell corporation, of which Joan is the sole owner, for ownership of a forty-five foot recreational vehicle the Husband purchased in 1999 for $650,000. In 2006, Husband even explicitly stated in a letter to Wife that if she would not accept an offer to end his alimony obligations, he would be left with no choice but to transfer his assets to Joan.

The trial court found additional evidence that Husband and Joan enjoyed an extravagant lifestyle, even after Husband claimed he was in financial trouble in 2004. Since 2004, Husband has taken trips to Vietnam, Australia, Indonesia, Italy, and Mexico, though Husband testified that a portion of those trips was reimbursed by a company that paid

Husband to lead motorcycle tours. Husband and Joan also took trips that were not reimbursed. In 2009, they vacationed in Italy. For the majority of 2011, Husband and Joan traveled throughout the United States, visiting Arizona, Colorado, Oregon, California, Alabama, and Ohio. The couple also enjoyed an extensive wine collection. In 2009, Husband charged a purchase of $1,209.60 at a California winery to a credit card in his name only. Husband claims that his luxurious lifestyle has been wholly supported Joan. However, the trial court found that Husband was not a credible witness based on his inconsistent testimony. The trial court affirmatively found that Husband had the ability to make his alimony payments and willfully declined to do so. The court found specifically that Husband transferred major assets to Joan in an attempt to avoid his obligations under the MDA. We think that, viewing the evidence in the light most favorable to the prosecution, the evidence more than supports the trial court's findings beyond a reasonable doubt. We therefore affirm.

### D. Attorney's Fees

Husband contends that the trial court erred in awarding attorney's fees to Wife because attorney's fees generally cannot be awarded in criminal contempt cases. However, we think that in this case they are warranted. The trial court awarded Wife attorney's fees pursuant to Tennessee Code Annotated section 36-5-103(c). That section "clearly authorizes a recovery of reasonable attorney's fees incurred in enforcing an order awarding alimony." *Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at *12 (Tenn. Ct. App. Aug. 23, 2004) (citing *Brewer v. Brewer*, 869 S.W.2d 928, 936 (Tenn. Ct. App. 1993)). Furthermore, this Court has held that the trial court's discretion to award attorney's fees under Tennessee Code Annotated section 36-5-103(c) extends to criminal contempt proceedings involving support. *Wilkinson v. Wilkinson*, No. M2010-00026-COA-R3-CV, 2011 WL 5986405, at *4 (Tenn. Ct. App. Nov. 29, 2011); *Dhillon v. Dhillon*, No. M2009-02018-COA-R3-CV, 2010 WL 3025193, at *8 (Tenn. Ct. App. Aug. 2, 2010); *Clarkson v. Clarkson*, No. M2006-02239-COA-R3-CV, 2007 WL 3072772, at *8, n.2 (Tenn. Ct. App. Oct. 22, 2007). We find nothing in the record to indicate that the trial court abused its discretion in making the award of attorney's fees.

Wife also requests an award for attorney's fees and expenses incurred on appeal. Tennessee Code Annotated section 36-5-103(c) also applies to attorney's fees on appeal. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). Thus, the decision to award attorney's fees is within our discretion. After considering Wife's request, we conclude that Wife is entitled to an award of attorney fees incurred on appeal. We remand this case to the trial court to determine the appropriate amount attorney's fees to which Wife is entitled.

## V. CONCLUSION

Based on the foregoing, we affirm the three convictions and sentences for Husband's failure to pay alimony, failure to provide medical insurance, and failure to provide proof of requisite life insurance. The remaining sixty-seven convictions are reversed. The trial court's award of judgment in favor of Wife and against Husband of $157,850.00 for alimony arrearage, $8,075.25 to reimburse Wife's medical insurance payments, and $11,801.19 for her reasonable attorney's fees is affirmed. We remand this case to the trial court for further proceedings consistent with this opinion. Costs on appeal are taxed to the Appellant James S. Lattimore, Jr. and his surety.

_____
DAVID R. FARMER, JUDGE