IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 28, 2017 Session

## SHERIDAN NICHOLS (formerly CROCKETT) v. RICHARD DAVID CROCKETT, JR.

**Appeal from the Circuit Court for Washington County**
**No. 26095    J. Eddie Lauderback, Judge**

_____

**No. E2016-00885-COA-R3-CV**

_____

This appeal results from a post-divorce criminal contempt conviction the plaintiff mother received for failing to adhere to a parenting plan that prohibits both parents from making disparaging remarks about the other parent. The trial court held that the plaintiff received sufficient notice under Rule 42(b) of the Tennessee Rules of Criminal Procedure and that she was guilty of criminal contempt beyond a reasonable doubt for two separate instances of disparaging remarks made about the father in the presence of their children. We affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part and Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J. joined.

Kelly O'Neil Herston and John F. Weaver, Knoxville, Tennessee, for the appellant, Sheridan Nichols.

Jason A. Creech, Suzanne S. Cook, and Matthew F. Bettis, Johnson City, Tennessee, for the appellee, Richard David Crockett, Jr.

**OPINION**

**I. BACKGROUND**

Sheridan Nichols ("Mother") and Richard David Crockett, Jr. ("Father") are the divorced parents of three minor children. Since their divorce in November 2007, the former spouses have acted under an agreed parenting plan that, inter alia, grants both parents the right to be "free of unwarranted derogatory remarks made about the parent or

his or her family by the other parent to the child or in the presence of the child." This is a statutory requirement for Tennessee parenting plans under Tennessee Code Annotated section 36-6-101. The parenting plan in this case was modified in May 2011, but this provision remained unchanged in the modified plan.

On June 8, 2015, Father filed his initial Motion for Contempt alleging that Mother had unilaterally enrolled their son Tripp in another school and had changed their son Britton's therapist, both actions without Father's consent as required by the parenting plan. Based upon this motion, Father's attorneys deposed Mother under oath on June 9, 2015. As a result of Mother's admissions during the deposition, Father filed his Amended Motion for Contempt ("Amended Motion") the following day.

The Amended Motion outlined that Mother had admitted to making several derogatory comments to the children about Father in violation of the parenting plan. This admission at the deposition was spurred by the playing of a recording by Father's attorney in which Mother berated her children by insulting Father and his family. Specifically, the Amended Motion provided that Mother's admitted insults about Father to their children include, but are not limited to: that Father is ungrateful; that Father is a hillbilly; that Father has not done anything for them but instead it is Mother's father who takes care of them; and that Father's relatives are uneducated, etc. The Amended Motion did not provide a date, timeframe, or location for these remarks. The Amended Motion further alleged that Mother had admitted at the deposition to giving the oldest son, Tripp, a document explaining parental alienation syndrome and had accused Father of alienating the sons from Mother.

The original Motion for Contempt asserted that Mother is in "civil and/or criminal contempt" and requested that Mother be "punished to the fullest extent of the law to vindicate the authority of the court, to purge the contempt, to ensure compliance, and to prevent further abuses." The Amended Motion explicitly stated that it is a motion for "Criminal Contempt." The "Conclusion" section of the motion provided that "Mother's behavior is criminally contemptuous, for which Father seeks the court to punish Mother as the court sees fit with the consequence of impressing upon Mother the seriousness of the issues at hand." The Amended Motion bore a "Contempt Warning" at the end of the document after Father's attorney's signature:

## CONTEMPT WARNING

You are hereby charged with CRIMINAL CONTEMPT pursuant to T.C.A. § 29-9-101 et. seq. You have certain constitutional rights and you are hereby given notice of the following rights: (a) You have the right to be represented by counsel and if you are unable to afford one, counsel shall be appointed for you; (b) You have the right to have guilt proven

against you beyond a reasonable doubt with the burden of proof upon the charging party; (c) You have the right against self-incrimination, which includes the right to remain silent as to the allegations of criminal contempt filed against you; (d) You have the right to be presumed innocent; (e) You have all other rights afforded to any other individual charged with violation of a criminal statute.

Pursuant to Rule 42(b)(1)(A) of the Tennessee Rules of Criminal Procedure, this CRIMINAL CONTEMPT matter shall be set for hearing on the 11th day of June, 2015 at 9:00 a.m.

Both the original motion and the Amended Motion requested attorney's fees for prosecution of the criminal contempt.

Mother timely filed a Motion to Dismiss Father's Amended Motion, alleging notice deficiencies under Rule 42(b) of the Tennessee Rules of Criminal Procedure. Specifically, Mother asserted that Father's Amended Motion failed to provide notice of the number of counts of contempt he was asserting, the extent of the jeopardy she faced, and the specific dates and locations where each alleged contemptuous act occurred.

In a Supplemental Brief in Support of the Amended Motion, Father asserted: (1) the parenting plan was a lawful order, (2) it was clear and unambiguous, (3) Mother repeatedly admitted to violating the plan, and (4) Mother willfully violated the plan as reflected by her deposition testimony and the audio recording. Father requested that the trial court sentence Mother to not less than ten days of imprisonment per occurrence of criminal contempt. The Supplemental Brief noted the date of the deposition, June 9, 2015, as when Mother apparently lied under oath before recanting and admitting to making derogatory insults about Father upon being presented with the audio recording. The brief also described the location of the first contempt allegation (derogatory comments about Father and his family) as being in Tripp's room with all three children present, as confirmed by Mother's deposition testimony. The brief did not provide, however, the date of the derogatory comments interaction. It also did not describe the date or location of Mother's interaction with Tripp regarding parental alienation, except for Mother's deposition testimony on June 9, 2015, that the latter interaction occurred "maybe a month ago."

The Supplemental Brief further described Mother's tirade against Father, describing that in the audio recording Mother stated as follows: "Father's mother was a drunk who died from alcoholism, how Father was ungrateful, how Father's brother didn't even graduate from high school, and how the minor children should teach algebra to Father's brother." The brief additionally provided pertinent parts of Mother's sworn

- 3 -

deposition testimony reflecting her lying under oath and later admitting to the derogatory comments alleged by Father in his Amended Motion. Further, the Supplemental Brief set forth Mother's testimony admitting to the parental alienation allegations put forward by Father. According to the brief, Mother's testimony reflected that she "show[ed] Tripp an article on parental alienation and [told] him that . . . his Father is engaging in such syndrome. Additionally, she openly told Tripp that Father was *brainwashing* him."

At the hearing on September 17, 2015, the trial court denied Mother's Motion to Dismiss, finding sufficient notice was given to Mother under Rule 42:

> I find that . . . the amended motion seeking criminal contempt places [Mother] on notice.
>
> The content of that notice under the rule says, "The criminal contempt notice shall state: (a) The time and place of the hearing," which it originally stated June 1, I believe, and that was not heard because of the other motions that were resolved by Judge Seeley at the time.
>
> Subsection (b) says, "Allow the original contemnor a reasonable time to prepare a defense," which I find that the – [Mother] has had reasonable time to prepare her defense on this charge.
>
> Subsection (c), "State the essential facts constituting the criminal contempt charged and describe it as such." The amended motion goes into great detail regarding the actions and conduct which the [F]ather believes are sufficient to constitute criminal contempt, so I find that the notice was sufficient.
>
> [Mother] in her motion to dismiss the [F]ather's amended motion for criminal contempt states that the motion fails to notify the [M]other of the number of counts alleged. I find that the motion does state with specificity the acts and counts that are alleged to constitute criminal contempt. It also states that the amended motion did not notify the [M]other of the extent of jeopardy she faces.
>
> In a criminal contempt charge the alleged contemnor has certain rights that go beyond a civil contempt situation, including right to counsel. You also have that right in a civil contempt charge if they're facing incarceration. The right to

be given notice of the charges, which I find [Mother] received. The right to freedom from double jeopardy, which you're right, the jeopardy has attached now that she's been sworn and testified. There is no right to a jury trial and I do not find that the specific extent of jeopardy has to be included in the motion.

She's represented by counsel. The contempt powers that a Court has are known to Counsel and that is I can sentence her up to 10 days and a $50 fine on each contempt charge in a criminal contempt situation. So I do not find that that is a deficiency in the amended motion that the [F]ather's filed.

And then the third thing that's . . . a basis for the motion to dismiss was it allegedly did not specify the date and location where each contemptuous act occurred. And although the exact dates may not have been pled in the motion, the conduct which was described in very specific terms I think put Mother on sufficient notice as to what the charges arise from and the conduct that was alleged to be contemptuous, so I'm going to respectfully overrule your motion.

During the hearing, Mother was questioned and cross-examined in open court under oath. She admitted to lying about making disparaging comments under oath during her deposition on June 9, 2015. Further, she acknowledged that she made the disparaging remarks in the presence of her children as reflected in her deposition and as demonstrated on the audio recording, which Father introduced as an exhibit at the hearing. Additionally, Mother admitted to posting an article about parental alienation on her Facebook wall on May 15, 2015, and noted that on an unspecified date in May 2015, she gave her son Tripp a separate article about parental alienation to help explain Father's behavior toward Mother. The son was not called to testify about the parental alienation allegations nor did Father submit the article Mother allegedly gave Tripp into evidence. The Facebook post, however, was admitted as an exhibit.

At the end of the hearing, the trial court found Mother in criminal contempt beyond a reasonable doubt for two separate and distinct counts of violating the parenting plan's prohibition on making derogatory comments about Father and his family in the presence of the children. The court concluded that the proof of Mother's actions was unrefuted in the audio tape, in her deposition, and in her admissions in open court. The trial court sentenced Mother to 20 days in jail, 10 per instance, with all but 24 hours suspended if Mother scheduled counseling, provided proof of counseling within 30 days, continued counseling as long as the court deems it necessary, and conducted herself going forward in compliance with the court's orders and the parenting plan.

Shortly thereafter, Father filed another motion for criminal contempt in addition to a motion to revoke Mother's suspended sentence, asserting that Mother made further derogatory remarks to the children after the hearing on September 17. This motion explicitly charged criminal contempt, included the same criminal contempt warning from the Amended Motion, requested ten days in jail per violation, provided the location and date of the new hearing, and specifically stated the location and date of the alleged contemptuous acts by Mother on the evening of September 17, 2015. The trial court held a second hearing on October 15, 2015, the details of which are not of record. The court denied Father's second motion for criminal contempt but granted in part his motion to revoke Mother's suspended sentence. The trial court reinstated another 24 hours of Mother's sentence based on her contemptuous discussions with the children on September 17, 2015, ordering her to serve 48 hours in jail. The court awarded attorney's fees to Father for prosecution of the criminal contempt charge.

On December 7, 2015, the trial court issued a written order based on the September 17 and October 15 hearings to detail its finding and conclusions as required by Rule 42(b)(5). However, Mother filed a Motion to Amend or Alter the December 7 order on January 4, 2016, concerning non-material details in the order. This motion was granted. On March 21, 2016, Mother filed a Supplemental Motion to Amend or Alter the same order, arguing that the criminal contempt conviction was not supported by the case law, notably *Dick v. Dick*, No. M2013-02461-COA-R3-CV, 2015 WL 4314032 (Tenn. Ct. App. July 14, 2015).[1] The trial court denied this motion. The court's final order, initially dated December 7, 2015, was filed on April 4, 2016.[2] The order provided that the court's "Amended Order" entered on March 24, 2016 constituted the court's final word in the case. The "Amended Order" held in pertinent part that

> This Court finds beyond a reasonable doubt that Mother is in willful and criminal contempt for violating a clear and lawful order of this Court namely the Parenting Plan dated May 9, 2011, as follows:
>
> > 1. Making unwarranted derogatory, denigrating and insulting remarks directly to the minor children about the Father and Father's relatives, which were captured on an audio recording introduced into evidence on September 17,

---

[1] The Tennessee Supreme Court denied permission to appeal in *Dick* and designated the decision "Not for Citation" on December 10, 2015.

[2] This court filed an order on May 27, 2016, in which it found that the final judgment was entered on April 4, 2016.

2015; and

> 2. Mother's discussing with the oldest minor child Mother's subjective belief that Father had engaged in parental alienation and Mother giving the minor child a handout on said topic[.]

Per the final order, Mother was "sentenced to jail for ten (10) days per instance of criminal contempt set forth above for a total of twenty (20) days to run consecutively." The court ordered Mother to "serve twenty-four (24) hours with the remaining nineteen (19) days suspended." An award of $4,941.15 in attorney's fees was made to Father. Mother's timely appeal followed.

## II. ISSUES

We have consolidated the issues on appeal as follows:

> 1. Whether the trial court erred in finding that Mother was provided sufficient notice of the "essential facts" constituting the criminal contempt charged as required by Rule 42(b)(1)(C) of the Tennessee Rules of Criminal Procedure?
>
> 2. Whether the trial court erred in convicting Mother of criminal contempt based on an audio recording and her own in-court and deposition testimony and whether further corroborating evidence was required?
>
> 3. Whether the trial court erred in awarding attorney's fees to Father for prosecution of Mother's criminal contempt?

## III. STANDARD OF REVIEW

Our standard of review is de novo upon the record of the proceedings below; however, we review the record with a presumption of correctness as to the trial court's factual determinations unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). There is no presumption of correctness as to the trial court's conclusions of law. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002).

## IV. DISCUSSION

### A.

Criminal contempt proceedings are designed to "vindicate the court's authority

- 7 -

and maintain the integrity of its orders;" thus, such proceedings are "generally punitive rather than remedial in nature." *Reed v. Hamilton*, 39 S.W.3d 115, 118 (Tenn. Ct. App. 2000). "A party who is in criminal contempt cannot be freed by eventual compliance." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000). We will reverse a criminal contempt conviction "if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." *Lee v. Lee*, No. M2014-01911-COA-R3-CV, 2017 WL 1205913, at *9 (Tenn. Ct. App. Mar. 31, 2017) (quoting Tenn. R. App. P. 13(e)).

A proceeding for criminal contempt is required to comply with Rule 42(b) of the Tennessee Rules of Criminal Procedure. *Long v. McAllister-Long*, 221 S.W.3d 1, 12 (Tenn. Ct. App. 2008). Rule 42(b) "requires that a party facing a criminal contempt charge be given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge." *Id.* Rule 42(b) reads as follows:

> (1) *Content of Notice*. The criminal contempt notice shall:
>
> (A) state the time and place of the hearing;
>
> (B) allow the defendant a reasonable time to prepare a defense; and
>
> (C) state the essential facts constituting the criminal contempt charged and describe it as such.

Tenn. R. Crim. P. 42(b)(1)(A)-(C) (emphasis added). The sufficiency of a contempt notice under Rule 42(b) of the Tennessee Rules of Criminal Procedure is a question of law reviewed de novo. *Sprague v. Sprague*, No. E2012-01133-COA-R3-CV, 2013 WL 3148278, at *3 (Tenn. Ct. App. Jun. 18, 2013); *State ex rel. Farris v. Bryant*, No. E2008-02597-COA-R3-CV, 2011 WL 676162, at *5 (Tenn. Ct. App. Feb. 24, 2011).

On appeal, Mother does not dispute notice under sections (1)(A) or (1)(B); instead, she claims that she did not receive the "essential facts" required under (1)(C). The "essential facts" required under Rule 42(b)(1)(C) are those facts that:

> (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual[;] (2) enable the accused to understand that the object of the charge is punishment–not merely to secure compliance with a previously existing order[;] and (3) sufficiently aid the accused to determine the nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous.

*Long*, 221 S.W.3d at 14. Mother claims that

> 1. She was not on notice of the *specific details* of the allegedly contemptuous acts including the *date and location of the same*;
>
> 2. She was not given the *specific number of counts* of criminal contempt alleged; and
>
> 3. She was not given notice of the *amount of jeopardy faced*.

**1.**

With respect to Mother's first argument relating to notice, Father provided specific details of the contemptuous acts, including both the date and location, almost two months prior to the hearing. In regard to the contempt charge for disparaging Father in the presence of the children, Father specifically alleged that Mother was in contempt for "violat[ing] the Agreed Parenting Plan and Tenn. Code Ann. § 36-6-101(6) by openly disparaging Father directly to the children." He stated that Mother "was recorded in the midst of berating and yelling disparaging comments about Father and his family directly to the children." Mother was presented with the recording in which she was caught making such comments. Father further quoted Mother's deposition in which she stated: "I do remember the conversation and it happened in Tripp's room." Thus, Mother: (1) was specifically told that she was being charged with criminal contempt for violating the Agreed Parenting Plan for openly disparaging Father in the presence of the children; (2) was presented with evidence of the contemptuous conduct in the form of an audio recording; and (3) was given her own deposition quotation where she stated that she recalled the specific contemptuous conversation and where it happened. Consequently, Mother had clear and unambiguous notice that she was being charged with criminal contempt for disparaging Father on that specific occasion which she *herself* identified. *See Long*, 221 S.W.3d at 12.

Concerning the contempt charge for providing parental alienation materials to Tripp, Father specifically alleged: "Mother willfully, intentionally, and contemptuously violated the parenting plan and Tenn. Code Ann. §36-6-101(6) by showing Tripp an article on parental alienation and telling him that, in her opinion, Father is engaged in such syndrome." Father quoted Mother's deposition where she identified the *specific instance* of contemptuous conduct and the time it happened:

> A. I did show Tripp a piece-I didn't send it home with him but I showed him parental alienation, yes, I did.

Q. And when did you show it to him.

A. Maybe a month ago.

Accordingly, Father identified the exact conduct and the specific time of the conduct by using Mother's own sworn statements to identify it. Father's Supplemental Brief provided Mother approximately 14 pages of information as to the "essential facts" of her contempt. Mother's argument is without merit because she identified the specific instances of contempt surrounding her disparaging comments and parental alienation discussions with the children well before the hearing on contempt.

**2.**

With respect to Mother's second argument relating to the specific number of contemptuous acts, Father listed four separate instances of contemptuous conduct in his Amended Motion (which is an expanded number from the two counts of contempt set forth in Father's first motion). The allegations of contempt are clearly set forth immediately following Father's allegation that *"Mother is in contempt of court . . . ."* The notice alone is sufficient for Mother to determine the number of allegations against her. However, Father gave *additional notice* of the four counts in the Supplemental Brief almost two months prior to the hearing. The record reveals that Father specifically set forth the number of the counts of contempt in two separate pleadings, months in advance of the hearing on criminal contempt. We find Mother's argument to be without merit.

**3.**

Concerning Mother's third argument that she was not given direct notice of the exact amount of jeopardy she faced, we note that the punishment for criminal contempt is statutory. Tenn. Code Ann. §29-9-101, et. al. By statute, an individual may be punished by up to a fine of $50 and/or imprisonment for up to 10 days. Tenn. Code Ann. § 29-9-103(b). In addition, Father gave further notice of the amount of punishment sought by explicitly stating in the Supplemental Brief that:

> As a result of Mother's criminal contempt, Father requests
> that this Court impose a sentence of not less than ***ten (10)***
> ***days imprisonment per violation*** . . . .

Mother had legal counsel at all times and Father provided specific notice of the exact amount of punishment faced by quoting the statute verbatim to her. Her argument lacks merit.

- 10 -

**B.**

Mother further contends that her conviction for providing Tripp with materials on parental alienation should be overturned because she was convicted solely on the basis of her admission of same.[3] She argues that under the corpus delicti rule her confession must be corroborated by independent evidence tending to show that the contemptuous behavior occurred.[4] Whether a confession in a criminal matter is properly corroborated is a mixed question of law and fact that we review de novo. *See State v. Sanders*, No. W2014-01513-CCA-R3-CD, 2015 WL 9433473, at *26 (Tenn. Ct. App. Dec. 23, 2015) (citing *State v. Bishop*, 431 S.W.3d 22, 61 (Tenn. 2014)). "If a challenge to corroboration of a confession rests on disputed facts, this Court should presume that the trial court's resolution of factual disputes is correct, unless the evidence preponderates against those findings." *Id.* (citing *Bishop*, 431 S.W.3d at 62).

**1.**

In *State v. Bishop*, the Tennessee Supreme Court held that "[a] statement made under oath in open court . . . requires no independent corroboration" and "the corroboration rule applies only to extrajudicial confessions." 431 S.W. 22, 60, 62 (Tenn. 2014) (citing *Opper v. United States*, 348 U.S. 84, 90 (1954)). The *Bishop* case involved two co-defendants, McKay and Bishop, who were arrested and charged with murder. *Id.* at 31-34. After McKay confessed, the police used McKay's confession to arrest Bishop. *Id.* Bishop subsequently confessed to the police and at trial testified again to the same facts in his confession. *Id.* The Tennessee Supreme Court determined that Bishop's "in-court confession did not require corroboration because he repeated his confession under oath at trial." *Id.* at 34. The Court observed, however, that had Bishop's extrajudicial confession required corroboration, "the State presented ample evidence that his confession was trustworthy." *Id.* at 31. The *Bishop* Court reasoned that "[e]xtrajudicial confessions are more suspect than admissions made in trial because they face 'neither the compulsion of the oath nor the test of cross-examination.'" *Id.* at 48 (quoting *Opper*, 348

---

[3]Mother does not challenge her conviction for criminal contempt arising out of her making disparaging comments about Father in the presence of the minor children via the audio recording.

[4] [T]he formal corpus delicti rule focuses on whether there is sufficient evidence of the body of the crime, rigidly severing a confession from the calculus[.] [T]he trustworthiness standard looks to the totality of the circumstances to assess both whether the crime occurred and whether the confession was trustworthy – i.e., reliable. Applying this standard, a reliable confession is itself sufficient evidence to establish the corpus delicti of the alleged offense." *State v. Dern*, 362 P.3d 566, 581 (Kan. 2015). Tennessee has adopted the "modified trustworthiness standard." *State v. Bishop*, 431 S.W.3d 22, 59-60 (Tenn. 2014). Under the facts of this case, Father was required to provide "substantial independent evidence tending to show that [Mother]'s statement is trustworthy, and the evidence must link [Mother] to the crime." *Id.* at 60.

U.S. at 90). However, "when [defendant] testified under oath at trial and repeated the essential facts of [his] confession, these statements were not extrajudicial." *Id.* at 62. "A sworn statement made in court provides a sufficient basis for conviction beyond a reasonable doubt." *Id.*

In the present case, Mother admitted to her actions, which constituted willful contempt of court, in a sworn deposition and while under oath in open court before the trial judge. Once she testified in open court and under oath that her earlier statements were accurate and voluntary, the standard requiring corroborating evidence does not apply - it applies only to extrajudicial confessions, not to testimony under oath. Mother's argument that her admissions in this case require "corroboration" is simply without merit. A statement made under oath in open court requires no independent corroboration. An infrajudicial confession is "in effect a plea of guilty." *See* 7 John H. Wigmore, *Evidence* § 2071, at 524 (Chadbourn Rev. 1978).

**2.**

Father also introduced independent corroborating evidence such that Mother's conviction for criminal contempt should be upheld. In addition to Mother's deposition statements and hearing testimony, at the hearing on September 17, 2015, Father introduced an audio recording of Mother openly disparaging him to the children and the Facebook article posted by Mother related to parental alienation. Mother's deposition testimony revealed detailed corroborating knowledge of the events at issue. *See Bishop*, 350 S.W.3d at 60 (citing *State v. Mauchley*, 67 P.3d 477, 489 (Utah 2003)). "An infrajudicial statement can . . . serve as corroboration for an extrajudicial one." *Bishop*, 431 S.W.3d at 61. Thus, even if we consider Mother's deposition testimony extrajudicial confessions, her in-court statements constituted sufficient corroborating infrajudicial admissions of her contempt. *Bishop*, 431 S.W.3d at 61. Willfully and with notice of the right to refuse to testify, Mother provided independent corroborating testimony under oath sufficient to sustain her conviction beyond a reasonable doubt.

**C.**

Father concedes that Mother is correct in asserting that attorney's fees may not be awarded in the context of a *criminal* contempt proceeding. In *Watts v. Watts*, 519 S.W.3d 572 (Tenn. Ct. App. 2016), this court observed:

> [A]lthough attorney's fees may be a logical and potentially effective part of a sentence for criminal contempt, and the legislature may wish to consider this issue in the future, we do not believe that the legislature has "specially provided" for attorney's fees as an additional punishment elsewhere under the present statutory provisions. "It is the legislature's

- 12 -

> responsibility to set the limits for punishment and the courts
> are not free to impose greater punishments without statutory
> authority."

*Id.* at 585 (quoting *Cable v. Clemmons,* 36 S.W.3d 39, 45 (Tenn. 2001)). We find no statutory authority permitting a party to recover attorney's fees incurred to prosecute a petition for criminal contempt. Accordingly, Mother is not liable for Father's attorney's fees incurred in prosecuting his petition for criminal contempt.

## V. CONCLUSION

The judgment of the trial court finding Mother guilty of criminal contempt is affirmed. The award of attorney's fees is reversed. The matter remanded with costs of the appeal assessed to Sheridan Nichols.

_____
JOHN W. MCCLARTY, JUDGE